HUSTED v AUTO-OWNERS INSURANCE COMPANY

Docket No. 104447. Argued October 8, 1998 (Calendar No. 17). Decided
April 27, 1999.

Marcia Husted, as personal representative of the estate of Richard A.
Husted, Jr., deceased, brought a wrongful death action in the
Kalamazoo Circuit Court against Henry C. Dobbs, who had struck
and killed the decedent while driving his employer's uninsured
vehicle. The court, Richard Ryan Lamb, J., entered a default judg-
ment against the defendant. Thereafter, the defendant brought an
action against Auto-Owners Insurance Company, his personal auto-
mobile insurance company, alleging that the insurer breached its
duty to defend him and acted in bad faith in refusing to settle the
claim. The court granted summary disposition for Auto-Owners,
finding that the business-use exclusion in its policy was unambigu-
ous and that Dobbs had no reasonable expectation of coverage.
The Court of Appeals, HOOD, P.J., and CONNOR and R. D. KAUFMAN,
JJ., affirmed in an unpublished opinion per curiam (Docket No.
134674). The Supreme Court denied leave to appeal. 442 Mich 855
(1993). The plaintiff then brought an action in the Kalamazoo Cir-
cuit Court, filing a writ of garnishment against Auto-Owners. The
court granted summary disposition for Auto-Owners, holding that
the no-fault act does not require Auto-Owners to provide portable
residual liability coverage that travels with the insured when driv-
ing an employer's uninsured vehicle. The Court of Appeals, GRIBBS,
P.J., and MARKEY and R. J. TAYLOR, JJ., affirmed in an opinion per
curiam, holding that the unambiguous policy exclusion did not vio-
late the no-fault act because portable liability coverage is optional,
rather than mandatory, under the act. 213 Mich App 547 (1995)
(Docket No. 172743). The Supreme Court remanded the case to the
circuit court for additional fact finding regarding whether Dobbs
knew or had reason to know that the truck was uninsured. 455
Mich 862 (1997). The court found that Dobbs did not know or have
reason to know that the truck was uninsured. The plaintiff appeals,
limited to whether the exclusion prohibiting nonowned automobile
coverage is valid under the no-fault act where an employee is driv-
ing an employer's uninsured vehicle.

In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER,
and Justices CORRIGAN and YOUNG, the Supreme Court held:

The no-fault act does not require residual liability coverage for an insured's operation of a vehicle that the insured does not own or has not registered and that is unambiguously excluded from the insured's insurance pursuant to a valid exclusion.

1. The essential insurance act, MCL 500.2101 *et seq.*; MSA 24.12101 *et seq.*, specifically permits insurers to base an exclusion from coverage on business use. The no-fault act's residual liability coverage requirement does not void this otherwise legitimate exclusion. The language of the no-fault act indicates that it does not require residual liability insurance to cover an insured's operation of *any* vehicle.

2. In this case, the owner of the vehicle—the driver's employer—failed to insure the vehicle. The insurance policy exclusion is valid, unambiguous, and applicable to the circumstances of the accident at issue and is explicitly authorized by the essential insurance act. The driver's insurer unambiguously excluded coverage while the driver was operating his employer's vehicle. Accordingly, there is no applicable insurance coverage.

Affirmed.

Justice KELLY, joined by Justices BRICKLEY and CAVANAGH, dissenting, stated that the no-fault act's residual liability coverage provision requires such coverage under the circumstances in this case. Public policy underlying the act favors a minimum level of coverage, and enforcement of the business use exclusion on the facts of this case would be unconscionable.

An owner or registrant of a vehicle has the primary duty to provide residual liability insurance. It does not follow that the Legislature did not intend to require another entity to take up this duty when the owner or registrant fails to provide coverage. Read together, §§ 3009, 3131, and 3135 of the no-fault act mandate that an automobile policy provide residual liability coverage. While case law has allowed exclusions for nonowned vehicles, exclusions that result in no residual liability coverage should be deemed invalid.

The plain and commonly understood meaning of the phrase "a motor vehicle" is "any motor vehicle." The word "a" is an indefinite article that denotes a single, but unspecified thing. Its commonly understood meaning comports with the term "any." "The" is a definite article that denotes particular, specified things.

Auto-Owners' business-use exclusion should be found void where, as here, the insured was driving his employer's uninsured vehicle in good faith. Public policy, as gleaned from the language of the Michigan no-fault act, requires a minimum of $20,000 in residual liability coverage under such circumstances. An unambiguous business-use exclusion may be enforced if the involved vehicle

is otherwise insured. However, when an employee drives an employer's uninsured vehicle believing it insured, the act and the doctrine of unconscionability render the exclusion void as against public policy.

*Ford & Kobayashi, P.C.* (by *James B. Ford*), for the plaintiff-appellant.

*Dykema, Gossett, P.L.L.C.* (by *Donald S. Young, Kathleen McCree Lewis,* and *Lori M. Silsbury*), and *Bartosiewicz & Kimbrel, P.C.* (by *Gary P. Bartosiewicz*), for defendant-appellee.

Amici Curiae:

*Willingham & Coté, P.C.* (by *John A. Yeager*), for Insurance Information Association of Michigan.

*Charters, Heck, O'Donnell, Petrulis & Zorza, P.C.* (by *Eric S. Goldstein*), for Michigan Trial Lawyers Association.

TAYLOR, J. Henry Dobbs struck and killed plaintiff's decedent while driving his employer's uninsured vehicle. Dobbs had a personal automobile insurance policy with defendant Auto-Owners Insurance Company. This policy included an applicable business-use exclusion. We granted leave to determine whether the no-fault act's residual liability coverage requirement voids this business-use exclusion under these circumstances. We conclude that the no-fault act does not require residual liability coverage for an insured's operation of a vehicle that he does not own or has not registered and that is unambiguously excluded from the insured's insurance. We accordingly affirm the Court of Appeals decision.

FACTS AND PROCEEDINGS

While driving a truck owned by his employer, defendant Henry Dobbs struck a motorcycle, killing the driver, Richard Husted, Jr. Unknown to Dobbs, the truck he was driving in the course of his employment was uninsured. Richard Husted's estate brought a wrongful death suit against defendant Dobbs.[1] The estate's attorney discovered that Dobbs had a personal automobile insurance policy through defendant Auto-Owners Insurance Company. The policy contained the following exclusion from coverage:

> (b) Coverage does not apply:

> \*     \*     \*

> (3) to any automobile not of the private passenger type while used in a business or occupation of the named insured, spouse or relative, or to any private passenger automobile while used in such business or occupation if operated by a person other than the named insured or spouse or the chauffeur or servant of such named insured or spouse unless the named insured or spouse is present in such automobile . . . .

Auto-Owners determined that this business-use exclusion applied and refused to provide coverage or a defense for Dobbs.

---

[1] This wrongful death suit was the first of three suits stemming from the accident. In the second suit, Dobbs sued Auto-Owners seeking coverage. The third and present suit is a garnishment action brought by Husted's estate against Auto-Owners.

Evidently relying on assurances that his employer would provide for his defense, and claiming that he could not afford an attorney, Dobbs did not appear. The plaintiff obtained a default judgment in the wrongful death action in the amount of $1,255,000.

Dobbs then brought suit seeking coverage from Auto-Owners. He alleged that the insurer breached its duty to defend him and acted in bad faith in refusing to settle the claim of the estate for the policy limits of $50,000. Both Dobbs and Auto-Owners filed motions for summary disposition. Dobbs argued that the policy exclusion was ambiguous and should thus be construed against the insurer. Dobbs also argued that the public policy underlying the no-fault act required Auto-Owners to provide portable residual liability coverage where its insured had an accident while driving another's uninsured vehicle. Auto-Owners argued that the exclusionary clause was enforceable and that it was not against public policy.

The circuit court, finding the policy exclusion unambiguous and that Dobbs had no reasonable expectation of coverage, determined that the exclusion applied and granted summary disposition to Auto-Owners. It did not specifically mention Dobbs' public policy argument. The Court of Appeals affirmed, upholding the circuit court's determination that the exclusionary clause was unambiguous and applied to deny coverage. Unpublished opinion per curiam, issued May 27, 1992 (Docket No. 134674). Regarding the public policy argument, the Court of Appeals concluded that the issue was not properly preserved for appellate review because it was not raised in Dobbs' original motion for summary disposi-

tion and was not ruled on by the circuit court.[2] This Court denied leave to appeal. 442 Mich 855 (1993).

Plaintiff Marcia Husted, personal representative of the estate of the decedent, Richard Husted, then brought the present suit, filing a writ of garnishment against Auto-Owners. Both parties moved for summary disposition. The circuit court granted summary disposition to Auto-Owners, holding that the Michigan no-fault act does not require Auto-Owners to provide portable residual liability coverage that travels with the insured when driving his employer's uninsured vehicle. The Court of Appeals affirmed, holding that the unambiguous policy exclusion did not violate the no-fault act because portable liability coverage is optional, rather than mandatory, under the act. 213 Mich App 547; 540 NW2d 743 (1995). The Court of Appeals also held that the garnishment claim was not barred under the doctrines of res judicata and collateral estoppel.

This Court, after first denying leave,[3] granted Dobbs' motion for reconsideration. Retaining jurisdiction, we remanded to the Kalamazoo Circuit Court for additional fact finding regarding whether Dobbs knew or had reason to know that the truck was uninsured. 455 Mich 862 (1997). The circuit court found that Dobbs did not know, nor did he have reason to know, that the truck was uninsured. This Court then granted leave to appeal, limited to the issue whether the business-use exclusion is valid under the no-fault act

---

[2] The Court of Appeals denied Dobbs' motion for rehearing in which he argued that the issue whether the no-fault act required coverage was timely raised and that the trial court had simply chosen to ignore it.

[3] 453 Mich 963 (1996).

where an employee is driving his employer's uninsured vehicle. 457 Mich 853 (1998).

DISCUSSION

We begin by considering the policy exclusion itself. It is a business-use exclusion that states that coverage does not apply to "any automobile not of the passenger type while used in a business or occupation of the named insured . . . ." In Dobbs' action against Auto-Owners, the Court of Appeals found this exclusion unambiguous and applicable to the accident at issue because Dobbs was driving his employer's truck in the course of his work when the accident occurred. In the present appeal, no one challenges the conclusions that this exclusion is unambiguous and applicable to the circumstances of the accident.

Further, the essential insurance act, MCL 500.2101 *et seq.*; MSA 24.12101 *et seq.*, specifically permits insurers to limit insurance coverage on the basis of business use. MCL 500.2118(2)(f); MSA 24.12118(2)(f) states:

> The underwriting rules which an insurer may establish for automobile insurance shall be based only on the following:
>
> *      *      *
>
> Use of a vehicle insured or to be insured for transportation of passengers for hire, for rental purposes, or for commercial purposes.

Thus, in this provision, the Legislature specifically permits insurance companies, in the course of underwriting, to base an exclusion from coverage on business use.

In essence then, we are dealing with an insurance policy exclusion that is valid, unambiguous, and applicable to the circumstances of the accident at issue. Yet raised by plaintiff is a statutory construction argument to the effect that the no-fault act's residual liability coverage requirement voids this otherwise legitimate exclusion.

Plaintiff contends, and the dissent concludes, that when several provisions of the no-fault act are read together, they require portable residual liability coverage, i.e., residual liability insurance to cover an insured's *operation* of *any* vehicle, even one that the insured's policy specifically excludes from coverage.

Michigan's no-fault system retains tort liability under certain circumstances. MCL 500.3135(1); MSA 24.13135(1) describes this residual tort liability:

> A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

MCL 500.3101(1); MSA 24.13101(1), which sets out the requirement for insurance to cover such residual liability, provides in pertinent part:

> The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance.

MCL 500.3131(1); MSA 24.13131(1) describes residual liability coverage. It provides:

> Residual liability insurance shall cover bodily injury and property damage which occurs within the United States, its

territories and possessions, or in Canada. This insurance shall afford coverage equivalent to that required as evidence of automobile liability insurance under the financial responsibility laws of the place in which the injury or damage occurs. In this state this insurance shall afford coverage for automobile liability retained by section 3135.

MCL 500.3009(1); MSA 24.13009(1), which § 3131(2) incorporates into the no-fault act, describes the minimum limits of an automobile policy. It provides:

> An automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall not be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless the liability coverage is subject to a limit, exclusive of interest and costs, of not less than $20,000.00 because of bodily injury to or death of 1 person in any 1 accident, and subject to that limit for 1 person, to a limit of not less than $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident, and to a limit of not less than $10,000.00 because of injury to or destruction of property of others in any accident.

Consideration of these provisions demonstrates that they do not evince a policy to require residual liability coverage for an insured's operation of *any* vehicle, i.e., even a vehicle specifically excluded from coverage by the insured's policy. The most obvious refutation of such a policy is that § 3101(1) requires owners or registrants, but not operators, to maintain residual liability coverage. Plaintiff cites no provision of the no-fault act that requires an insured to maintain residual liability coverage with respect to any and all vehicles the insured operates. Sections

3131(1) and 3009(1), which set out the parameters of residual liability coverage, do not strengthen plaintiff's case in the absence of authority indicating that an insured is required to maintain such residual liability coverage with respect to any and all vehicles the insured operates.

Plaintiff makes a specific textual argument, which the dissent adopts, regarding § 3135(1), as incorporated into § 3131(1), and § 3009(1). She notes that these provisions require residual liability coverage for use of "a" motor vehicle, rather than use of "the" or "such" motor vehicle. She reads these provisions as requiring coverage for *any* vehicle an insured drives, not just vehicles designated in the insured's policy.

Plaintiff is correct that the use of "a" rather than "the" indicates that these provisions require residual liability coverage for vehicles other than the insured's own vehicle designated in the policy. In drafting §§ 3009 and 3131, the Legislature chose to deviate from language in the Uniform Motor Vehicle Accident Reparations Act, on which the Michigan no-fault act is based. The corresponding language in the uniform act, subsection 7(c), requires "security for payment of tort liabilities, arising from maintenance or use of *the* motor vehicle." 14 ULA 68, Civil Procedural and Remedial Laws (emphasis added). Further, subsection 10(a)(1) of the uniform act specifies that the minimum required residual liability coverage extends only to the "secured vehicle." *Id.* at 72.

This Court, and the Court of Appeals, have repeatedly held that the Legislature's failure to adopt language contained in the uniform act creates a presumption that the corresponding language was considered and rejected. *Michigan Mut Ins Co v Carson*

*City Texaco, Inc,* 421 Mich 144, 148; 365 NW2d 89
(1984); *Bak v Citizens Ins Co,* 199 Mich App 730,
742; 503 NW2d 94 (1993). Consequently, given the fail-
ure of the Legislature to adopt the language in the
uniform act that restricted residual liability coverage
to the insured's secured vehicle, it must be presumed
that the Legislature considered but rejected the limi-
tation of such coverage to the insured's secured vehi-
cle. Accordingly, the no-fault act's residual liability
coverage requirement is not limited to the vehicles
designated in the insured's policy.

However, that the residual liability coverage
requirement is not so limited does not indicate that it
extends to "any" vehicle an insured drives, including
vehicles specifically excluded from coverage in the
insured's policy. The Court of Appeals convincingly
rejected plaintiff's reading of "a" as meaning "any":

> Plaintiff's argument, that the Legislature's use of "a"
> instead of "such" evinces its intent that the residual liability
> coverage follow the driver to any vehicle he drives, is sim-
> ply too broad. The Legislature's use of "a" means that the
> required residual liability coverage is not limited only to the
> insured's own vehicle. Rather, it does not expand the
> requirement to all vehicles an insured may drive and leaves
> open the possibility for exclusions. The language does not
> require liability for *any* or *all* or *each and every* vehicle an
> insured drives. The Legislature could have used these more
> inclusive adjectives if its intent was to require impervious
> residual liability coverage. [213 Mich App 554.]

Thus, while the Legislature rejected the use of the
restrictive term "the," it also rejected the unrestrictive
terms "any," "all," or "each and every." Rather, the
Legislature settled on the term "a." In interpreting
these provisions, we must give meaning to this choice

of terms. As stated above, the Legislature's rejection of the restrictive term "the" indicates that the residual liability coverage requirement is not limited to the vehicles designated in an insured's policy. However, the Legislature's rejection of unrestrictive terms, such as "any," demonstrates that the residual liability coverage requirement does not extend to any and every vehicle an insured operates, i.e., even a vehicle specifically excluded from coverage in the insured's policy. Accordingly, the language of these provisions would not invalidate a valid and unambiguous policy exclusion, like the business-use exclusion at issue here.

We note that the other no-fault provision arguably applicable here also provides no support for plaintiff's contention that an insured is required to maintain residual liability coverage for *any* vehicle he operates. Section 3102(2) states that "[a] person who operates a motor vehicle . . . with the knowledge that the owner or registrant does not have security in full force and effect is guilty of a misdemeanor" and describes the penalty therefore. This section does not in any way indicate that such a driver must maintain residual liability insurance to cover such circumstances. Here, of course, the trial court specifically determined that Dobbs did not know that his employer had not insured the vehicle at issue. However, a driver's knowledge that another's vehicle is uninsured is relevant only to the issue whether the driver is guilty of a misdemeanor. Such knowledge does not bear on whether the business-use exclusion at issue violates the no-fault act.

For these reasons, the language of the no-fault act indicates that it does not require residual liability insurance to cover an insured's *operation* of *any*

vehicle. In other words, such coverage is not mandatory under the no-fault act. This Court has indicated that a policy exclusion that conflicts with the mandatory coverage requirements of the no-fault act is void as contrary to public policy. *Citizens Ins Co of America v Federated Mut Ins Co*, 448 Mich 225, 232; 531 NW2d 138 (1995). However, because the no-fault act does not mandate residual liability coverage for an insured's operation of any vehicle, it would not void an otherwise valid and unambiguous exclusion, like the business-use exclusion at issue here.

Precedent from this Court interpreting the no-fault act also evidences that its residual liability coverage requirement does not mandate such coverage with respect to any vehicle an insured operates. In *Bradley v Mid-Century Ins Co*, 409 Mich 1, 52-54; 294 NW2d 141 (1980), this Court discussed changes wrought by enactment of the no-fault act. The *Bradley* Court stated that the Legislature repealed the uninsured motorist amendment not because uninsured motorists no longer existed, but because the no-fault act provided "other forms of protection against [their] negligence." *Id.* at 52. It held:

> Before no-fault, an accident victim seeking compensation could proceed only in tort. If the negligent driver was uninsured the victim would ordinarily receive no compensation for his injuries other than that recovered from the Motor Vehicle Accident Claims Fund. Under the no-fault act, an accident victim proceeds against his own insurer. If he is not insured, he claims benefits from the insurer of the vehicle or driver involved in the accident. If the owner and driver are uninsured motorists, he proceeds against the assigned claims facility which provides no-fault benefits where there is no insurance applicable to the accident. Thus, victims of uninsured motorists now have insurance

compensation without regard to whether there is uninsured motorist coverage. [*Id.*]

It noted a distinction between PIP benefits and residual tort liability at 54:

> True, no-fault benefits may be insufficient to fully compensate one injured by a negligent uninsured motorist. But . . . one's ability to recover where a tort action is permitted is largely dependent on the fortuitous circumstances of the tortfeasor's collectibility and insurance coverage. [In adopting the no-fault system and repealing the uninsured motorist amendment, t]he Legislature apparently saw the substitution of a right to PIP benefits—unlimited medical expense and work loss and survivor's loss in amounts and for times limited by law—as an appropriate substitute for whatever additional recoveries might result from continuing mandatory uninsured motorist coverage . . . .

In short, the no-fault act guarantees personal protection benefits to accident victims, even in the absence of applicable insurance coverage, in exchange for limitations on the victim's ability to file a tort claim. But the no-fault act does not similarly guarantee residual liability coverage, e.g., when a negligent driver is uninsured or uncollectible. The *Bradley* Court's description of this distinction between PIP benefits and residual liability coverage belies plaintiff's contention that the no-fault act guarantees residual liability coverage under the circumstances at issue here.

Further, this Court recently addressed the issue of responsibility for residual liability coverage in *Citizens, supra,* 448 Mich 225. *Citizens* presented a priority dispute between the insurer of an owner and the

insurer of a driver of a vehicle involved in an accident.[4]

The *Citizens* Court stated at 228-229:

> Michigan's no-fault act requires the *owner or registrant* of a motor vehicle to purchase an automobile insurance policy that provides among other coverage "residual liability insurance." MCL 500.3101(1); MSA 24.13101(1); *State Farm Mutual Automobile Ins Co v Ruuska,* 412 Mich 321; 314 NW2d 184 (1982). [Emphasis added.]

Regarding which insurer's coverage was primary, it held at 235:

> Although we acknowledge that the Legislature has remained silent concerning who among competing insurers must provide primary residual liability benefits, we refuse to construe that silence as expressly authorizing an owner's insurer . . . to unilaterally dictate the priority of coverage among insurers in a manner that shifts insurance costs to the nonowner of the vehicle. To construe the Legislature's silence in that manner would undermine the dominant principle expressly embodied by the no-fault act: vehicle owners and their insurers are responsible for bearing the costs of injuries caused by the permissive use or operation of the vehicle. Instead, because the obligation to obtain residual liability insurance is triggered by the obligation to register a vehicle, rather than by the operation of the vehicle, we think it reasonable to conclude that the owner or registrant of the vehicle has the primary duty to provide residual liability insurance.

It also held at 235-236:

---

[4] While we acknowledge that *Citizens* is distinguishable from the present case because the owner in *Citizens* had insured the vehicle; this distinction is not dispositive of the applicability of *Citizens* here. After discussing *Citizens,* we will directly address this applicability issue.

> As this Court has previously held, one who uses another's vehicle generally is not required to provide residual liability coverage for injuries or death arising from use of that other vehicle. *State Farm v Ruuska, supra* at 343 (opinion of LEVIN, J.), and 353 (opinion of COLEMAN, C.J.). Because such coverage is optional, the extent of Citizens' and State Farm's insurance obligations is governed by the terms of their respective policies.

Finally, the *Citizens'* Court reiterated the *Ruuska* Court's conclusion that " '[a]n insurer is not required by the no-fault act to provide portable coverage when the owner drives another insured vehicle.' " *Citizens, supra* at 237-238. Accordingly, *Citizens'* bottom-line holding is that the no-fault act requires owners and registrants, but not drivers, to provide residual liability coverage.

The question then becomes whether this holding applies equally where, as here, the vehicle owner fails to maintain the required residual liability coverage. As stated above, the *Bradley* Court concluded that the no-fault act does not guarantee residual liability coverage. In the absence of such a guarantee of residual liability coverage, the fact that a vehicle owner failed to insure the vehicle at issue would not change the responsibility of the operator of the vehicle. It is only with respect to guaranteed benefits that the failure of the primarily responsible party to maintain coverage would justify requiring another entity to assume such responsibility. Accordingly, the fact that a vehicle owner fails to maintain required residual liability coverage would not transform the operator of the vehicle into a party required to provide such coverage. Therefore, this Court's holdings in *Citizens* apply here, despite the fact that the present case can be distin-

guished from *Citizens* on the basis that the vehicle owner here was uninsured.

Moreover, even were this analysis insufficient to demonstrate that plaintiff's reading of the no-fault act is flawed, a reading of the no-fault act in conjunction with the essential insurance act proves fatal to plaintiff's claim. As discussed above, the essential insurance act explicitly authorizes business-use exclusions. The essential insurance act was adopted by 1979 PA 145, effective January 1, 1980, while the no-fault act was adopted by 1972 PA 294, effective October 1, 1973. It is a "well-noted principle of construction that a subsequently enacted specific statute is regarded as an exception to a prior general one, especially if they are in pari materia." *Malcolm v East Detroit*, 437 Mich 132, 139; 468 NW2d 479 (1991). This is the case here because the essential insurance act is clearly more specifically directed to the issue of a business-use exclusion than is the more general no-fault act. Therefore, even if a policy of portable residual liability coverage could be divined from the no-fault act, it would not void a business-use exclusion that the Legislature more recently and specifically authorized in the essential insurance act.

For all these reasons, we conclude that the no-fault act does not require residual liability coverage for an insured's operation of a vehicle that he does not own or has not registered and that is unambiguously excluded from the insured's insurance.

Here, the owner (Dobbs' employer) failed to insure the vehicle. Dobbs' insurance unambiguously excluded coverage while Dobbs was operating his employer's vehicle pursuant to an exclusion explicitly authorized by the essential insurance act. Accord-

ingly, there is no applicable insurance coverage. The lack of applicable insurance obviously detrimentally affects plaintiff's ability to collect any tort recovery. However, nothing in the no-fault act indicates that an owner or registrant's failure to insure a vehicle changes the obligation of the driver's insurer with respect to residual liability coverage and voids an otherwise valid and applicable exclusion.[5]

### CONCLUSION

The no-fault act does not require residual liability coverage for an insured's operation of a vehicle that he does not own or has not registered and that is unambiguously excluded from the insured's insurance pursuant to a valid exclusion. We accordingly affirm the Court of Appeals decision, which affirmed the circuit court's grant of summary disposition to Auto-Owners.

WEAVER, C.J., and CORRIGAN and YOUNG, JJ., concurred with TAYLOR, J.

KELLY, J. (*dissenting*). I disagree with the majority that the no-fault act's residual liability coverage provision does not require residual liability coverage under

---

[5] The Court of Appeals aptly stated:

> Moreover, under plaintiff's interpretation, any policy exclusion would violate the no-fault residual liability requirement when the exclusion resulted in no coverage to someone involved in an accident. Thus, the validity of an exclusion would turn on who was involved in an accident and the parties' respective insurance coverages. This type of ad hoc determination would cripple the insurers' ability to assess their risk, result in additional excessive litigation, and make the policy coverage in each case fact determinative. [213 Mich App 555.]

the circumstances of this case. I would reverse the judgment of the Court of Appeals and hold that Auto-Owners must provide coverage here. Public policy underlying the act favors a minimum level of coverage, and enforcement of the exclusion on the facts of this case would be unconscionable.

The majority's reliance on *Citizens Ins Co of America v Federated Mut Ins Co*,[1] and *State Farm Mut Automobile Ins Co v Ruuska*,[2] is misplaced. Those cases involved insured vehicles. This case does not. In the past, we have examined the validity of exclusions from nonowned coverage under the no-fault act. However, we have never addressed whether a nonowned, business-use exclusion may deny portable residual liability coverage where an employee drives his employer's uninsured vehicle in good faith, believing it insured.

In *Ruuska, supra*, we examined whether the no-fault act precluded enforcement of a nonowned vehicle provision excluding coverage for an automobile owned by any relative residing in the same household. In two separate opinions, we held that the exclusion was unenforceable.[3] Three justices, in the lead opinion authored by Justice WILLIAMS, held that the no-fault act precluded an insurer from denying liability on the basis that (1) the nonowned vehicle was owned by a relative residing in the same household as the insured or (2) the vehicle was furnished or available for the frequent or regular use of the insured.

---

[1] 448 Mich 225; 531 NW2d 138 (1995).

[2] 412 Mich 321; 314 NW2d 184 (1982).

[3] Justices FITZGERALD and MOODY concurred with Justice WILLIAMS. Justice LEVIN concurred in the result.

We find such an exclusion repugnant to the clear direc-
tive of the no-fault act requiring that a policy purchased
pursuant to that act provide residual liability coverage for
the use of a motor vehicle. [*Id.* at 336.]

In a separate opinion, Justice LEVIN would have
held that the no-fault act does not require residual lia-
bility coverage on all nonowned vehicles a person
may drive. He noted, however, that the act might
require coverage when the insured drives an unin-
sured nonowned vehicle. He explained:

The no-fault act does not require residual liability insur-
ance covering all vehicles a person may drive. Residual lia-
bility insurance is required for residual tort liability arising
out of the ownership, maintenance or use of the vehicle in
respect to which a policy is required to be maintained and
in effect. An insurer is not required by the no-fault act to
provide *portable* coverage when the owner drives another
insured vehicle.[8]

[8] Other provisions and policies of the act are implicated where a
person insured or covered by a no-fault policy drives an uninsured
vehicle. No opinion is intimated in that regard.

[*Id.* at 342-343.]

Likewise, in *Citizens Ins Co, supra,* the question
left open in *Ruuska* was not addressed. *Citizens*
involved a priority question between two insurers. In
that case, the insured was driving another insured
vehicle. This Court held that the insurer of the vehicle
involved in the accident is obligated to provide liabil-
ity coverage before the parties may turn to the
driver's personal no-fault insurer. *Citizens* is not con-
trolling in the present case, which does not involve a
priority issue.

The majority takes the language in *Citizens* out of
context and misapplies it to the instant case. The

owner or registrant of the vehicle has the primary duty to provide residual liability insurance. It does not follow that the Legislature did not intend to require another entity to take up this duty when the owner or registrant fails to provide coverage. I would hold that the Legislature did so intend.

I find merit in plaintiff's argument that, when read together, §§ 3009, 3131, and 3135 mandate that an automobile policy provide residual liability coverage. It must be at a minimum level of $20,000 for the insured's use of any motor vehicle in the state of Michigan, i.e., portable coverage. While this Court has allowed exclusions for nonowned vehicles, exclusions that result in no residual liability coverage at all, as where the involved vehicle was uninsured, should be deemed invalid.[4]

The act's plain language, while not expressly precluding Auto-Owners' exclusion, reveals a policy favoring a minimum level of coverage. As explained, § 3131 requires the minimum $20,000 coverage as established in § 3009 for automobile liability retained by § 3135. Key to our analysis, then, should be whether § 3135[5] reveals legislative intent to afford the minimum statutory coverage for an insured's use of

---

[4] The majority also maintains that the essential insurance act, MCL 500.2118(2)(f); MSA 24.12118(2)(f), supports defendant's position. Contrary to this assertion, § 3009 of the no-fault act specifically retains the requirement of residual liability coverage under the circumstances of this case. Normally, an insurer may write a business-use exclusion into a policy. However, an harmonious reading of § 3009 and § 2118(2)(f) leads to the conclusion that an insurer may not do so if the exclusion negates the residual liability coverage.

[5] Section 3135 states that tort liability is retained for the "ownership, maintenance, or *use* of a motor vehicle . . . ." MCL 500.3135(1); MSA 24.13135(1) (emphasis added).

any motor vehicle in the state.[6] I would hold that it does.

The majority asserts that the Legislature's use of the word "a" in § 3135 precludes the use of the more unrestrictive "any" in its place. However, the plain and commonly understood meaning of the phrase "a motor vehicle" is "any motor vehicle." The word "a" is an indefinite article that denotes "a single but unspecified . . . thing."[7] Its commonly understood meaning comports with the term "any."[8] The Legislature's choice of the word "a" before "motor vehicle" instead of the word "the" must be given effect. "The" is a definite article that denotes "particular, specified . . . things."[9]

If the Legislature had intended that the $20,000 minimum residual liability coverage be required only on the insured's owned vehicle, it could have easily chosen language to effectuate that intent. Instead, the language chosen reveals a legislative policy decision favoring coverage. Consequently, where, as here, no other coverage is available, the act militates in favor of coverage.

---

[6] Section 3009 also uses the phrase "use of a motor vehicle" when explaining the minimum $20,000 coverage requirement.

[7] *The American Heritage Dictionary* (3d ed), p 1.

[8] *Id.* In another context, we noted that the commonly understood meaning of "a" and "any" are one and the same. In *Powers v DAIIE*, 427 Mich 602; 398 NW2d 411 (1986), we considered several cases in which the insurers refused to provide residual liability coverage. The reason given was that the vehicles involved were neither "owned" nor "nonowned" automobiles as defined in the policies. Comparing the language in two policies, one providing coverage for "a non-owned automobile," and the other for "any nonowned automobile," we stated "[w]e do not find the difference between the use of 'a' and 'any' to be significant." *Id.* at 633, n 9.

[9] *The American Heritage Dictionary*, n 7 *supra* at 1859.

This interpretation is supported by at least one high court opinion from a sister state having statutory language regarding minimum mandatory liability coverage similar to our own. Montana's mandatory liability coverage statute states in pertinent part that every owner

> shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or *use of a motor vehicle* . . . . [*Allstate Ins Co v Hankinson*, 244 Mont 1, 3; 795 P2d 480 (1990).]

The *Hankinson* court interpreted this provision as requiring mandatory liability coverage for use of *any* motor vehicle. Consequently, it held that an exclusion in the policy that would have negated the minimum coverage requirement for a nonowned vehicle driven without the owner's permission was void. As the court explained:

> In this case, the effect of the non-owned auto provision's qualifying language "with the owner's permission" is to provide less than the minimum mandatory coverage required by [Montana Code Annotated] § 61-6-301.
> Our prior decisions interpreting insurance policies . . . establishes [sic] that when policy language excludes coverage otherwise statutorily mandated then that policy language is void as contrary to public policy. [*Id.* at 4.]

We have held, similarly, that an exclusion in a policy that conflicts with the mandatory coverage requirements of the Michigan no-fault act is void as contrary to public policy. *Citizens Ins, supra* at 232. Consequently, as in *Hankinson*, Auto-Owners' exclusion, that conflicts with the act's policy favoring mini-

mum coverage on any vehicle operated in Michigan, is void as contrary to public policy.

This conclusion comports with our earlier decisions holding that the no-fault act insures persons, not just vehicles. *Clevenger v Allstate Ins Co,* 443 Mich 646; 505 NW2d 553 (1993); *Lee v DAIIE,* 412 Mich 505; 315 NW2d 413 (1982). The purpose of the act is to ensure minimum mandatory coverage to persons. Hence, it requires portable residual liability coverage where, as here, no other coverage existed and the insured was driving the vehicle in the good-faith belief that it was insured.

I would hold that there is a distinct difference between the decision in this case and previous decisions upholding unambiguous exclusions when the vehicle was otherwise insured. See *Powers v DAIIE,* 427 Mich 602, 615-616; 398 NW2d 411 (1986). This Court has allowed such exclusions where the effect is to determine the priority of coverage. However, the public policy underlying the act, as revealed by its plain language, militates against enforcement of the exclusion where there is no other coverage. In this regard, I find persuasive the words of Justice LEVIN, in *Ruuska, supra* at 351:

> The [nonowned vehicle] exclusion from coverage is apparently designed to guard against a person having coverage on one vehicle and no coverage, or less coverage, on another vehicle owned by him or regularly used by him. The exclusion seeks to protect the insurer against a policyholder failing to buy coverage on another vehicle *he owns.* To be effective, the provision must exclude an uninsured vehicle registered in the name of another that the insured regularly uses—*a leased automobile.* The exclusion is to this extent clearly reasonable and conscionable. [Emphasis in original.]

> The exclusion is written so broadly, however, that it encompasses situations beyond the evil it is designed to guard against. In seeking to protect itself against overreaching by the insured, the insurer has overwritten the exclusion and failed to protect the insured who acts in good faith. The exclusion is aimed at a particular evil; it goes beyond reason and good conscience to exclude liability beyond the need for the exclusion.
>
> When a court limits such an exclusion, it is subject to the charge that it is rewriting the policy. Implicit in the charge is the assumption that the insurer can draft the policy as it sees fit. Its power to do so is, however, restricted by the doctrine[] of unconscionability . . . .

Justice LEVIN's comments in *Ruuska* apply equally in this case.

Further supporting a finding of unconscionability here is the fact that an employee driving his employer's vehicle often has no way of being certain that the vehicle is insured. Apparently, the truck that Mr. Dobbs drove was uninsured because his employer had failed to pay the premiums, allowing the policy to lapse. The circuit court, on remand from this Court, determined that Mr. Dobbs did not know, and could not have known, that the truck was uninsured. To allow such an employee's personal insurer to deny coverage for the statutory minimum amount on the basis of a business-use exclusion leads to an unconscionable result.

This Court's holding potentially exposes to unlimited liability all employees in this state whose occupations require that they drive vehicles owned by their employers. These employees will frequently have relied in good faith on their employers to obey the law and insure their vehicles. Consequently, I would hold, on the facts of this case, that the doctrine of

unconscionability requires a decision that Auto-Owners' business-use exclusion is void.

In conclusion, defendant Auto-Owners' business-use exclusion should be found void where, as here, the insured was driving his employer's uninsured vehicle in good faith. Public policy, as gleaned from the language of the Michigan no-fault act, requires a minimum of $20,000 in residual liability coverage under such circumstances. An unambiguous business-use exclusion may be enforced if the involved vehicle is otherwise insured. However, when an employee drives his employer's uninsured vehicle believing it insured, the act and the doctrine of unconscionability render the exclusion void as against public policy.

For these reasons, I respectfully dissent.

BRICKLEY and CAVANAGH, JJ., concurred with KELLY, J.