*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

UNPUBLISHED
February 21, 2023

Plaintiff-Appellant,

v

No. 358675
Midland Circuit Court
LC No. 19-006595-NF

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellee,

and

DAVID J. MUNGER, SUSIE MUNGER, and
TODD MUNGER,

Defendants.

Before: HOOD, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

In this first-party no-fault action, plaintiff, Farm Bureau General Insurance Company of Michigan (Farm Bureau), appeals by right the trial court's order granting summary disposition to defendant, State Farm Mutual Automobile Insurance Company (State Farm), under MCR 2.116(I)(2). The trial court concluded that the injured person, defendant, David Munger (David), was not domiciled with his parents, defendants Susie Munger (Susie) and Todd Munger (Todd),[1] at the time of his accident. Richard Wietfeldt, the grandfather of David's girlfriend at the time of the accident,[2] owned the Chevrolet truck David was driving when the accident occurred. The trial

---

[1] Farm Bureau voluntarily dismissed David, Susie, and Todd from this litigation and they are not parties to this appeal.

[2] According to David, he and his girlfriend broke up approximately two months after the accident.

-1-

court found that, Farm Bureau, the Wietfeldts' insurer, was the priority insurer for David's personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.* We reverse and remand.

## I. BACKGROUND

In January 2019, David was involved in a two-car accident. At the time of the accident, David was driving the Wietfeldts' Chevrolet truck, which was insured by Farm Bureau. David's parents, Susie and Todd, were insured by State Farm. Farm Bureau alleged that State Farm was the first-priority insurer because David's domicile was with Susie and Todd. State Farm argued that Farm Bureau was the first-priority insurer because, it asserted, David was domiciled with the Wietfeldts.

At his deposition, David testified that he lived with his girlfriend and their son. He testified that they spent their time equally between his parents' house and the Wietfeldts' house. He agreed that he intended to live with the Wietfeldts until he and his girlfriend could afford their own residence. But he also stated he planned to live between the Mungers' home and the Wietfeldts' home until he and his girlfriend could afford their own place. David testified that his family spent three or four days at each house, which was consistent with the testimony of Susie and Todd. David testified that he received business mail at his parents' house, but his personal mail and checks were delivered to the Wietfeldts' house. David's driver's license listed his address as his parents' house, but he believed that, after the accident, he gave the hospital the Wietfeldts' address as his own.

David's parents excluded David as a driver from their policy with State Farm. David drove the Wietfeldts' Chevrolet truck instead, and kept tools for his self-owned construction business in the truck. David testified that the rest of his personal property was split between the two houses. Although the Wietfeldts preferred that David park the truck at their house, he typically parked it at the residence closest to wherever he was working the next day. On the date of the accident, he had spent the night at his parents' house.

Farm Bureau moved for summary disposition, in part, on the basis that there was no question of fact concerning David's domicile. It argued that the facts established that David was domiciled at his parents' house at the time of the accident.[3] State Farm countered that it was entitled to summary disposition because the facts established that David was domiciled with the Wietfeldts. After a hearing, where the trial court considered several factors, it concluded that

---

[3] We note that although Farm Bureau's motion referenced MCR 2.116(C)(7), (8), and (9), it effectively moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). This Court need not accept a party's choice of label for a motion because doing so would elevate form over substance. *Jawad A Shah, MD, PC v State Farm Mut Auto Ins*, 324 Mich App 182, 204; 920 NW2d 148 (2018). Farm Bureau's labels for its claims were not consistent with its arguments. It attached documentary evidence to its motion and relied on that documentary evidence to argue that David was domiciled with his parents.

David was domiciled with the Wietfeldts and granted summary disposition to State Farm under MCR 2.116(I)(2). This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. (citation omitted). Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2). See *West Mich Annual Conference of the United Methodist Church v Grand Rapids*, 336 Mich App 132, 138; 969 NW2d 813 (2021).

## III. LAW AND ANALYSIS

Farm Bureau argues that the trial court erred when it determined that David was domiciled with the Wietfeldts rather than his parents. We agree. A genuine issue of material fact continues to exist on this issue.

Persons injured in no-fault accidents proceed against their own insurers first, and proceed against other insurers only if they do not have no-fault coverage. *Husted v Auto-Owners Ins Co*, 459 Mich 500, 512; 591 NW2d 642 (1999). The first-priority insurer for PIP benefits is the insurer who insures a named insured of an insurance policy, that person's spouse, or a relative domiciled in the same household. MCL 500.3114(1), as amended by 2016 PA 347.[4] If such a policy exists, that insurer shall pay the injured person's benefits. MCL 500.3114(1), as amended by 2016 PA 347. Otherwise, the injured person is entitled to claim PIP benefits from the insurer of the owner or registrant of the occupied vehicle. MCL 500.3114(4), as amended by 2016 PA 347.

Generally, a person's domicile for the purposes of PIP benefits is a question of fact. *Corbin v Meemic Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354672); slip op at 3. When the underlying facts are not in dispute, however, the determination of domicile is a question of law. *Id*. at ___; slip op at 3. If a party is entitled to judgment as a matter of law, the trial court may grant summary disposition under MCR 2.116(I)(1) (no genuine issue of material fact) or (2) (opposing party entitled to summary disposition). *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 514; 844 NW2d 470 (2014).

Although an individual can have more than one residence, they can have only one domicile. *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 495-496; 835 NW2d 363 (2013). To determine

---

[4] The no-fault act was amended effective June 11, 2019, 2019 PA 21, which was after the January 2019 accident at issue in this case.

whether an individual was domiciled in the same household as an insured, courts weigh the following factors:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; . . . (2) the formality or informality of the relationship between the person and the members of the household; . . . (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises . . . ; [and] (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [*Workman v Detroit Auto Inter-Ins Exchange*, 404 Mich 477, 496-497; 274 NW2d 373 (1979).]

An individual may be domiciled in the same household as an insured even if the individual does not live there. *Dairyland Ins Co v Auto Owners Ins Co*, 123 Mich App 675, 681; 333 NW2d 322 (1983). When considering whether a young person has departed a parent's home and established a new domicile, additional relevant factors include

> whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support. [*Id*. at 682.]

A court must also consider any additional relevant factors. *Id*. at 681. "The *Workman-Dairyland* multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled." *Grange Ins Co*, 494 Mich at 497 n 41.

There is a question of fact regarding David's domicile at the time of the accident and, as a result, the trial court erroneously granted summary disposition in State Farm's favor. The first *Workman* factor is "the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his domicile or household." *Workman*, 404 Mich at 496. David testified that he intended to live with his girlfriend, whom he did not intend to break up with at the time of the accident. At the time, David's living arrangement in the Wietfeldts' home was not permanent because David and his girlfriend intended to move once they got on their feet. But a person's declared intent is relevant even if it is for an indefinite length of time. See *id*. At the same time, however, when asked where he lived at the time of the accident, David testified that he "just kind of split [his time] between [his] parents and her [grand]parents so we could save up enough money to do our own thing." He acknowledged that he and his girlfriend spent "between three and four days at each" house. Accordingly, there is a genuine issue of material fact related to where David intended to live and have as his domicile at the time of the accident.

David's relationship with the members of each household was informal and friendly. See *Workman*, 404 Mich at 497-498. The second *Workman* factor is "the formality or informality of the relationship between the person and the members of the household." *Workman*, 404 Mich at 496. This factor is more precisely a question of whether the individual is in a close, intimate, and informal relationship with the members of the household. See *id*. at 496, 497-498. See also

*Pamperin v Milwaukee Mut Ins Co*, 55 Wis 2d 27, 33; 197 NW2d 783 (1972) ("Residents or members of a household, as those terms are employed in insurance policies for purposes of coverage, is a phrase designative of a relationship where persons live together as a family and deal with each other in a close, intimate and informal relationship and not at arm's length."). David lived with his parents part of the time. Although David was not related to the Wietfeldts, he and his girlfriend had a son together, and their son was, therefore, the grandchild of the Wietfeldts. They were able to come and go as they pleased from both households. Accordingly, David had an informal, or intimate, relationship with the members of both households—as a son and the father of a grandchild—and this factor may cut either way.

The third *Workman* factor is "whether the place where the person lives is in the same house, within the same curtilage or upon the same premises," and the fourth *Workman* factor is "the existence of another place of lodging by the person alleging residence or domicile in the household." *Workman*, 404 Mich at 496-497 (quotation marks omitted). There are two separate residences involved in this case. David testified that he lived between three or four days at each residence, effectively spending half of his time at one home and half at the other. Accordingly, the third and fourth *Workman* factors do not clearly favor one residence over the other.

Considering the *Dairyland* factors, the first is "whether the claimant continues to use his parents' home as his mailing address." *Dairyland*, 123 Mich App at 682. David testified that his mailing address was his parents' address. He also testified, however, that although his business mail went to his parents' house, his personal letters and checks went to the Wietfeldts' house. There was also evidence that David provided the Wietfeldts' address when he was at the hospital after the accident. Accordingly, although David continues to use his parents' home as his mailing address, as required by the first *Dairyland* factor, there is also evidence that the Wietfeldts' house is used as another mailing address. The first *Dairyland* factor, therefore, does not clearly favor either residence.

The second *Dairyland* factor is "whether [the claimant] maintains some possessions with his parents." *Dairyland*, 123 Mich App at 682. David testified that he kept half of his possessions at each house, but he kept his tools and supplies for his business in the Wietfeldts' truck. The Wietfeldts allowed David to use their truck, so long as he lived in their home. He could, however, drive it to his parents' house and parked it there when his worksite for the following day was closer to his parents and he slept at their house the night before. David also testified that the Wietfeldts preferred that he parked the truck at their house so that no one bothered it. The evidence, therefore, demonstrated that although David maintained some possessions at his parents' house, he also maintained possessions vital to his job in the Wietfeldts' vehicle and at their home. Accordingly, this factor does not clearly favor one residence over another.

The third *Dairyland* factor is whether the claimant "uses his parents' address on his driver's license or other documents." *Dairyland*, 123 Mich App at 682. The crash report following the accident listed the Mungers' address in the crash report. As discussed earlier, however, there was also evidence that when David was at the hospital after the accident, he gave the Wietfeldts' address as his own. The third *Dairyland* factor, therefore, does not clearly favor one residence over another.

The fourth and fifth *Dairyland* factors are "whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support." *Dairyland*, 123 Mich App at 682. Todd testified that when David worked close to the Munger home, David and his girlfriend drove the Wietfeldts' "vehicle to our house and stay[ed] in the rooms downstairs." Todd also testified that David periodically ate leftover food at the Mungers' house. David, however, owned his own construction business. Accordingly, although an area was maintained for David in Susie and Todd's house, the fact David had his own business demonstrated that he was not dependent on his parents for support.

On balance, the majority of these factors do not heavily favor either party. The main issue on appeal is David's stated intent to live with his girlfriend and their son at the Wietfeldts' house—even though that intent was temporary. Although he testified that this was his intent at the time of the accident, David also testified that their plan was to live between the Mungers' home and the Wietfeldts' home until they could afford their own place. The other factors, too, favor neither residence and, instead, demonstrate that there is a factual dispute regarding David's domicile that must be resolved by the trier of fact. Accordingly, we conclude that the trial court erred when it granted summary disposition in State Farm's favor.[5]

We reverse and remand for further proceedings. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly

---

[5] As an alternative ground to affirm, State Farm argues that it would not be required to pay David's PIP benefits because Susie and Todd's insurance policy listed David as an excluded driver. We reject this argument. At the time of the accident, the statutory exception for excluded drivers applied only to drivers who were operating vehicles from which they were excluded as operators. See *Bronson Health Care Group, Inc v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 343-344; 948 NW2d 115 (2019), citing former MCL 500.3113(d) and former MCL 500.3009(2). David was driving the Wietfeldts' vehicle at the time of the accident, and Susie and Todd's insurance policy did not list that vehicle. Accordingly, David was not operating a motor vehicle for which he was named as an excluded operator and, therefore, the statutory exception for excluded drivers, former MCL 500.3113(d), does not apply.