MICHIGAN MUTUAL INSURANCE COMPANY v CARSON CITY
TEXACO, INC

Docket No. 71235. Argued May 9, 1984 (Calendar No. 8).—Decided
    December 28, 1984. Released January 29, 1985. Rehearing de-
    nied *post,* 1202.

Michigan Mutual Insurance Company, as subrogee of its insured,
    Tank Truck Service Company, Inc., brought an action in the
    Wayne Circuit Court against Carson City Texaco, Inc., and
    State Farm Insurance Company, its insurer, seeking reimburse-
    ment of insurance benefits paid to Tank Truck for damages to
    its vehicle repair facilities as a result of a fire that occurred
    while it was repairing a heating oil delivery truck owned by
    Carson City Texaco. The plaintiff alleged that the fire resulted
    from the maintenance of the truck and that State Farm as
    insurer of the truck's owner was liable to pay property protec-
    tion benefits for accidental damage to tangible property arising
    out of the maintenance of a motor vehicle. The court, Michael
    L. Stacey, J., granted the defendants' motion for summary
    judgment. The Court of Appeals, Bronson, P.J., and J. H. Gillis,
    J. (V. J. Brennan, J., dissenting), reversed and remanded for
    further proceedings in an opinion per curiam (Docket No.
    60462). The defendants appeal.

    In an opinion by Justice Kavanagh, joined by Justices Levin,
Brickley, Cavanagh, and Boyle, the Supreme Court *held:*

    A no-fault insurer is responsible to pay benefits for property
damage arising out of the maintenance of a motor vehicle in
the course of a business of maintaining motor vehicles.

    1. A no-fault insurer is liable to pay benefits for accidental
damage to tangible property arising out of the ownership,
operation, maintenance, or use of a motor vehicle as a motor
vehicle without regard to fault. Damage to tangible property
consists of physical injury to or destruction of the property and
the loss of use of the property so injured or destroyed. Mainte-
nance of a motor vehicle includes the act of repairing a covered
motor vehicle for purposes of the no-fault act. Thus, if property
damage arises out of the maintenance of a motor vehicle as a
motor vehicle, even in the course of a business of maintaining

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 7 Am Jur 2d, Automobile Insurance §§ 348, 349, 366.

motor vehicles, an insurer is liable to pay benefits for accidental damage.

2. In this case, the vehicle in question in having its oil delivery system repaired was being maintained as a motor vehicle. When a specially equipped motor vehicle is brought in for maintenance service and work is being performed on it, it is of little consequence which part is being serviced. The no-fault act contemplates coverage for damages arising out of such maintenance. The garage keeper's liability act does not apply to damage to a garage keeper's premises such as that for which recovery is sought in this case. Rather, it applies to damage to motor vehicles. However, the Court of Appeals should not have resolved the issue whether the property damage arose out of the maintenance of the truck. The issue should be resolved by the trial court.

Chief Justice Williams, joined by Justices Ryan and Boyle, concurring specially by opinion, stated that while the plain language of the no-fault act and its legislative history mandate the conclusion reached by the majority, the result is contrary to the philosophy of the act and to good public policy. Requiring the insurer of the vehicle being repaired to compensate the garage keeper whose employee negligently caused the fire that damaged the garage keeper's premises increases, rather than contains, the cost of the no-fault system. In addition, the benefit is received by a party who is not a member of and does not pay premiums into the no-fault system, while the burden is placed on the premium payers without justifiable reason or any discernible public benefit.

Affirmed in part.

123 Mich App 240; 333 NW2d 235 (1983) affirmed in part.

OPINION OF THE COURT

1. INSURANCE — NO-FAULT — MAINTENANCE OF MOTOR VEHICLES — PROPERTY PROTECTION BENEFITS.

A no-fault insurer is responsible to pay benefits for property damage arising out of the maintenance of a motor vehicle in the course of a business of maintaining motor vehicles (MCL 500.3121; MSA 24.13121).

CONCURRING OPINION BY WILLIAMS, C.J.

2. INSURANCE — NO-FAULT — MAINTENANCE OF MOTOR VEHICLES — PROPERTY PROTECTION BENEFITS.

*Provisions of the no-fault act that require the no-fault insurer of a vehicle to pay property protection benefits to a garage keeper for damages to the garage keeper's premises resulting from*

*negligence by an employee while repairing an insured vehicle is contrary to the philosophy of the act and to good public policy in that it increases, rather than contains, the cost of the no-fault system and benefits a party who is not a member of the no-fault system while placing the burden on the premium payers without justifiable reason or discernible public benefit (MCL 500.3121; MSA 24.13121).*

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Mark E. Morley)* for the plaintiff.

*Cholette, Perkins & Buchanan* (by *Robert J. Riley)* for the defendants.

KAVANAGH, J. This case requires us to decide whether the insurer of a motor vehicle is responsible under the no-fault insurance act, MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.,* to pay benefits for property damage arising out of the maintenance of a motor vehicle in the course of a business of maintaining motor vehicles. We hold that such insurer is responsible.

I

Defendant Carson City Texaco, Inc., owned a heating oil delivery truck which it delivered to Tank Truck Service Company, Inc., for maintenance. A fire occurred, causing damage to Tank Truck's property. Plaintiff Michigan Mutual Insurance Co., Tank Truck's insurer, paid benefits to Tank Truck for the damage to the premises. Michigan Mutual, as subrogee of Tank Truck, sued Carson City Texaco and its motor vehicle insurer, State Farm Insurance Co., for reimbursement of the insurance benefits paid by it.

Plaintiff alleged that the fire resulted from the maintenance of the delivery truck. Plaintiff further alleged that the no-fault insurer of the truck was legally responsible to pay property protection

benefits under MCL 500.3121(1); MSA 24.13121(1)
for accidental damage to tangible property arising
out of the maintenance of a motor vehicle. Defen-
dants moved for summary judgment, GCR 1963,
117.2(1), which was granted. Plaintiff's motion for
summary judgment, GCR 1963, 117.2(3), was de-
nied by the trial court on the grounds that
§ 3121(1) was never intended to apply to the fac-
tual situation alleged.

The Court of Appeals reversed. *Michigan Mu-
tual Ins Co v Carson City Texaco, Inc,* 123 Mich
App 240; 333 NW2d 235 (1983). The Court con-
cluded that the property damage arose out of the
maintenance of the insured's truck. Accordingly,
the motor vehicle insurer was responsible to pay
property protection insurance benefits.

## II

Defendants argue that the no-fault act was
never intended to apply to these circumstances.
The decision of the Court of Appeals, argue defen-
dants, expands coverage and increases the cost of
insurance, contrary to the policies of the no-fault
act. They assert that the decision also nullifies the
provisions of the garage keeper's liability act, MCL
256.541 *et seq.;* MSA 9.1721 *et seq.,* despite the
absence of any legislative intent to do so.

The no-fault act provides that:

"(1) Under property protection insurance an insurer
is liable to pay benefits for accidental damage to tangi-
ble property arising out of the ownership, operation,
maintenance or use of a motor vehicle as a motor
vehicle subject to the provisions of this section and
sections 3123, 3125 and 3127.

"(2) Property protection insurance benefits are due
under the conditions stated in this chapter without
regard to fault.

"(3) Damage to tangible property consists of physical injury to or destruction of the property and loss of use of the property so injured or destroyed." MCL 500.3121; MSA 24.13121.

Maintenance is not defined by the act. We have said, however, that in addition to the meaning appearing from the common sense of the word, " '[t]he "maintenance" aspect of the "ownership, maintenance use" clause covers the act of repairing the covered automobile.' " *Miller v Auto-Owners Ins Co*, 411 Mich 633, 639; 309 NW2d 544 (1981).

This definition of maintenance differs from the definition given the term by the drafters of the Uniform Motor Vehicle Accident Reparations Act, "one of the model acts utilized as source material in the drafting of the no-fault act." *Citizens Ins Co v Tuttle*, 411 Mich 536, 546; 309 NW2d 174 (1981). The uniform act defines maintenance so as to exclude the business of maintenance. "Maintenance or use of a motor vehicle does not include (i) conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles. . . ." 14 ULA, Civil Procedural and Remedial Laws, § 1(a)(6)(i), p 51. According to the official comment to related § 5(a)(2), referring to § 1(a)(6), "[t]he primary purpose of that provision is to disallow basic reparation benefits to a person injured by automobile maintenance activities in a motor vehicle service garage. . . ."

The absence of a comparable provision in the Michigan act persuades us that the Legislature did not intend to exclude property protection benefits under circumstances like those alleged by plaintiffs. In drawing on UMVARA as a model, the Legislature presumably considered the proposed definition of maintenance and rejected it. In any event, the language of § 3121(1), providing "bene-

fits for accidental damage to tangible property arising out of the . . . maintenance or use of a motor vehicle as a motor vehicle" easily encompasses the circumstances of the present case.

We conclude that if property damage arises out of the maintenance of a motor vehicle as a motor vehicle, even in the course of a business of maintaining motor vehicles, an insurer is liable to pay benefits for accidental damage to tangible property under property protection insurance.

The garage keeper's liability act, MCL 256.541 *et seq.;* MSA 9.1721 *et seq.,* is irrelevant. That act merely declares that proof of damage to a motor vehicle which is in the possession of a garage keeper is prima facie evidence of the negligent act of such keeper. See MCL 256.541; MSA 9.1721. It alone does not render the garage keeper liable. Moreover, the act applies to damage to motor vehicles, not to the damage to the garage keeper's premises for which recovery is sought here.

Defendants also argue that the Court of Appeals concluded erroneously that the property damage arose out of the maintenance of a motor vehicle. Defendants say that the damage arose out of the negligence of a garage mechanic in placing a light bulb in a location where gasoline was spilled on it.

There is no disagreement that the truck was being maintained. Defendants contend, however, that because the parts of the truck being repaired were its oil delivery system, the truck was not being maintained as a motor vehicle.

We are not convinced by appellant's argument that calibrating the fuel delivery meter did not, as a matter of law constitute maintenance of the truck as a motor vehicle.

When a specially equipped motor vehicle is brought in for maintenance service and work is being performed on it, it is of little consequence

which part is being serviced. Whether the maintenance work is concerned with its motor, drive train, radio, heater, oil delivery equipment, upholstery, or other part of the vehicle, the Michigan no-fault act contemplates coverage for damages arising out of such maintenance.

We agree with defendants, however, that the Court of Appeals should not have resolved the question whether the property damage arose out of the maintenance of the truck. The pleadings put this question in issue and should be resolved in the trial court.

The decision of the Court of Appeals, as modified, is affirmed.

LEVIN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with KAVANAGH, J.

WILLIAMS, C.J. *(concurring).* The rules of statutory construction compel me to concur with the well-reasoned opinion of my brother KAVANAGH. But justice requires me to declare that the result of this opinion is contrary both to the philosophy of the no-fault act and to good public policy.

The plain language of the statute, reinforced by the legislative history, as recognized by Justice KAVANAGH's opinion, mandates the conclusion reached. But the result is almost incredible. A garage keeper, whose employee's negligence in repairing a vehicle left for maintenance and resulting in damage to that vehicle and to the garage, is rewarded by reparations from the insurer of the owner of the damaged vehicle.

Without the effect of the no-fault act, under the garage keeper's liability act, proof of damage such as occurred here would be prima facie evidence that the garage keeper would be liable in damages to the vehicle owner. MCL 256.541; MSA 9.1721.

The garage owner would suffer the damages to the garage.

The untoward result of this opinion offends the philosophy of the no-fault act and good public policy in two ways. First, it violates the no-fault act's objective of reducing the "high costs" inherent in the preexisting tort system. *Shavers v Attorney General,* 402 Mich 554, 578; 267 NW2d 72 (1978). No-fault reparation of the garage keeper because of his own employee's negligence by the vehicle owner's insurer increases rather than contains the cost of the system. Second, such reparation is to a non-premium paying, non-member of the no-fault system by the insurer of a vehicle owner who is without fault. Thus, a burden is put on the premium payers without justifiable reason or any discernible public benefit. See *Citizens Ins Co v Tuttle,* 411 Mich 536, 546-547; 309 NW2d 174 (1981).

In sum, judicial restraint in statutory interpretation unfortunately compels a result flying in the face of the policy of the no-fault act and common-sense justice.

RYAN and BOYLE, JJ., concurred with WILLIAMS, C.J.