ALLIED PROPERTY & CASUALTY INSURANCE COMPANY v
PIONEER STATE MUTUAL INSURANCE COMPANY

Docket No. 259381. Submitted May 3, 2006, at Lansing. Decided October
17, 2006, at 9:10 a.m.

Allied Property & Casualty Insurance Company brought an action
in the Roscommon Circuit Court against Pioneer State Mutual
Insurance Company to recover the payment it made to John
Fitzgerald under a homeowner's policy for damage caused by a
fire. The fire started when Fitzgerald's son, who was repairing
a car that belonged to his child's mother, dropped his light
source while installing the fuel pump. Allied alleged that
Pioneer, as the car insurer, was required to pay the benefits
under the no-fault insurance act, MCL 500.3101 *et seq*. The trial
court, Michael J. Baumgartner, J., granted Pioneer's motion for
summary disposition, ruling that Pioneer was not required to
pay benefits because the damage occurred while Fitzgerald's
son was operating an auto-repair business. Pioneer appealed.

The Court of Appeals *held*:

1. A no-fault insurer is not liable for property protection
insurance benefits under the plain language of MCL 500.3121(1),
which was amended to exempt no-fault carriers from liability for
property damage caused by all auto-repair businesses, regardless
of whether they are located in a repair shop, an auto-dealership
garage, or a residence.

2. The trial court correctly ruled that there was no genuine
issue of material fact regarding whether Fitzgerald's son oper-
ated a repair business out of Fitzgerald's garage. Fitzgerald's
son admitted in deposition testimony that he performed body
and engine work, stored a substantial amount of repair equip-
ment in the garage, had regular customers, and charged fixed
rates for his labor. The facts that he was not a licensed
mechanic, did not register as a business, had no sign advertising
his services, and worked only intermittently were irrelevant.

3. The fact that Fitzgerald's son performed the repair at issue
free of charge does not exclude the repair from having been
performed within the course of a business. The statutory language
exempts no-fault carriers from liability for all damage related to

auto repairs at auto-repair businesses, regardless of whether a business owner chooses to grant a particular customer a gratuity.

Affirmed.

WILDER, J., dissenting, would have concluded that the plain language of the statute would preclude coverage for damage from a fire related to auto repair at an auto-repair business only if the facts demonstrated that the repair and the related damage occurred within the course of a business, and that, on this record, there were genuine issues of material fact whether the repair and the related damage at issue occurred within the course of a business.

1. INSURANCE — NO-FAULT — PROPERTY PROTECTION INSURANCE — AUTO-REPAIR BUSINESSES — FACILITIES.

A no-fault insurer is not liable to pay benefits for property damage caused by auto-repair businesses, regardless of whether the businesses are located in a repair shop, an auto-dealership garage, or a residence (MCL 500.3121[1]).

2. INSURANCE — NO-FAULT — PROPERTY PROTECTION INSURANCE — AUTO-REPAIR BUSINESSES — COURSE OF BUSINESS — GRATUITIES.

A no-fault insurer is not liable to pay benefits for property damage caused by auto-repair businesses, regardless of whether the repair at issue was performed free of charge (MCL 500.3121[1]).

*Hopkins Curran & Smith, PLLC* (by *Phillip K. Yeager* and *Daniel J. Langdon*), for the plaintiff.

*Bensinger, Cotant & Menkes, P.C.* (by *Patrick J. Michaels*), for the defendant.

Before: BORRELLO, P.J., and SAAD and WILDER, JJ.

SAAD, J. This is an insurance coverage dispute between a homeowner's insurer, Allied Property & Casualty Insurance Company, and an automobile insurer, Pioneer State Mutual Insurance Company. Allied appeals the trial court's order that granted summary disposition to Pioneer, and we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This subrogation case arises out of a house fire that started in the attached garage of a home owned by John Fitzgerald. John Fitzgerald's adult son, Anthony Fitzgerald, lived at the house and performed car repairs in the garage. On the day of the incident, Anthony Fitzgerald installed a new fuel pump on a car owned by his child's mother, Patricia Brauning. After Anthony Fitzgerald set down a drop light he used to check the seal on the fuel pump, the light fell to the ground and started a fire that damaged the home.

John Fitzgerald's homeowner's insurer, Allied, paid him for the property loss. Allied then filed this action and alleged that, under Michigan's no-fault automobile insurance act, Pioneer, the car insurer, was liable to pay benefits for the property damage caused by the fire. Both parties filed motions for summary disposition. Among other arguments, Pioneer asserted that it was not required to pay benefits because the damage occurred "within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles" and, therefore, no coverage was available under the no-fault act. MCL 500.3121(1). In response, Allied claimed, in the alternative, that Anthony Fitzgerald did not operate a repair business, or, at the time of the incident, he was not acting "within the course of a business" because he repaired Brauning's vehicle without charge, as a favor. On January 20, 2004, the trial court granted Pioneer's motion for summary disposition on the ground that Anthony was operating a vehicle-repair business when the fire occurred.

## II. ANALYSIS

The Michigan Legislature has chosen to substantially regulate the insurance industry in general and automo-

bile insurance in particular.[1] This particular coverage
dispute raises an issue of first impression under Michi-
gan's no-fault automobile insurance law: whether the
homeowner's insurer or the vehicle's no-fault insurer is
liable for accidental damage to a home in which a
resident operates a vehicle-repair business.[2] Again, we
note, importantly, that the Michigan Legislature has
promulgated a comprehensive and exhaustive regula-
tory scheme that governs automobile insurance in this
state. Before the amendment of MCL 500.3121(1), the
statutory language regarding accidental property dam-
age caused by the use or maintenance of a vehicle

---

[1] See MCL 500.100 *et seq.*; MCL 500.3101 *et seq.* As our Supreme Court
observed in *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588, 595; 648
NW2d 591 (2002):

> It is by now well understood that the Michigan no-fault
> insurance act is a comprehensive legislative enactment designed to
> regulate the insurance of motor vehicles in this state and the
> payment of benefits resulting from accidents involving those
> motor vehicles. As we explained in *Shavers v Attorney General*, 402
> Mich 554, 578-579; 267 NW2d 72 (1978):

> "The Michigan No-Fault Insurance Act, which became law on
> October 1, 1973, was offered as an innovative social and legal
> response to the long delays, inequitable payment structure, and
> high legal costs inherent in the tort (or 'fault') liability system.
> The goal of the no-fault insurance system was to provide victims of
> motor vehicle accidents with assured, adequate, and prompt
> reparation for certain economic losses. The Legislature believed
> this goal could be most effectively achieved through a system of
> *compulsory* insurance, whereby every Michigan motorist would be
> required to purchase no-fault insurance or be unable to operate a
> vehicle legally in this state. Under this system, victims of motor
> vehicle accidents would receive insurance benefits for their inju-
> ries as a substitute for their common-law remedy in tort."

[2] We review de novo issues of statutory interpretation and the grant of
summary disposition under MCR 2.116(C)(10). *Anderson v Myers*, 268
Mich App 713, 714; 709 NW2d 171 (2005); *Dressel v Ameribank*, 468 Mich
557, 561; 664 NW2d 151 (2003).

simply stated that the no-fault carrier was liable for the property damage: "Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." Thus, absent another exclusion, and regardless of whether it was performed by a business or a lay person, before the 1993 amendment, if accidental property damage occurred during a vehicle repair, the no-fault insurer was liable to pay property protection benefits. *Michigan Mut Ins Co v Carson City Texaco, Inc*, 421 Mich 144, 148-149; 365 NW2d 89 (1984); *Universal Underwriters Ins Group v Auto Club Ins Ass'n*, 256 Mich App 541, 544-545; 666 NW2d 294 (2003).

### A. THE AMENDMENT

In 1993, the Legislature revised MCL 500.3121(1) to clearly provide that a no-fault insurer is not liable to pay benefits for accidental property damage that occurs within the course of a vehicle-repair business:

> Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125, and 3127. *However, accidental damage to tangible property does not include accidental damage to tangible property, other than the insured motor vehicle, that occurs within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles.* [MCL 500.3121(1) (emphasis added).]

Thus, under circumstances in which the damage occurs "within the course of a business," the property damage would necessarily be covered by some other risk, prop-

erty, or general liability insurance carried by the business. Here, we address a closely related factual situation in which the auto-repair business was conducted in the attached garage of a home, not in a typical business environment with business insurance coverage. With the addition of the "course of a business" exception, we must answer the question whether the Legislature intended the amendment to apply to a business conducted at a residence,[3] which, as here, would impose liability on a homeowner or the homeowner's insurer, or whether the amendment was intended to apply only to property damage that occurs in traditional commercial establishments. In other words, does the plain language of the amendment include "backyard" mechanics who earn money repairing cars?

We examine the plain language of the statute to discern the Legislature's intent on these specific facts. *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 381; 670 NW2d 569 (2003). The language of the amendment reflects the Legislature's intent to exempt no-fault carriers from liability for property damage that occurs within the course of a vehicle-repair business and, therefore, necessarily shifts liability to the business enterprise for coverage. For example, under the 1993 amendment, it appears clear that if an owner of an automobile takes his or her vehicle to an automobile dealership for repairs and, a mechanic, while making repairs, causes fire damage to the car dealership's building, the car owner's no-fault carrier is not responsible for the fire damage to the property under the clear language of MCL 500.3121(1). But does the same result obtain if the auto-repair

---

[3] We refer to situations in which, like here, a mechanic performs auto maintenance or repairs with his or her own tools at a home garage. Such mechanics are commonly called "backyard" mechanics.

business operates at a residence? Because the Legislature amended MCL 500.3121 to exempt no-fault carriers from liability for a class of risks—property damage caused by an auto-repair business—it would seem to follow that the amendment applies regardless of whether the "business" is conducted at a repair shop, an auto-dealership garage, or at a residence. As long as the accident occurs in course of business of repairing or maintaining vehicles and the damage is caused by the maintenance or repair, the no-fault insurer is not liable for the property protection benefits under a strict reading of the statute. Our holding is premised on both the plain language of the statute and our Legislature's enactment of a detailed and comprehensive regulatory scheme to govern coverage issues.

### B. ANTHONY FITZGERALD OPERATED AN AUTO-REPAIR BUSINESS

We hold that the trial court correctly ruled that there is no genuine issue of material fact about whether Anthony Fitzgerald operated a repair business out of his father's garage. Our Supreme Court has ruled that " '[b]usiness' is commonly defined as 'a person . . . engaged in . . . a service . . . [and] is defined in legal parlance as an '[a]ctivity or enterprise for gain, benefit, advantage or livelihood.' " *Terrien v Zwit*, 467 Mich 56, 64; 648 NW2d 602 (2002), quoting *Webster's College Dictionary* (1991) and Black's Law Dictionary (6th ed). Business is also commonly understood to mean "[a] commercial enterprise or establishment." *The American Heritage Dictionary of the English Language* (3d ed). "Course" is commonly defined to mean, in part, "a particular manner of proceeding," "a mode of conduct," or "a systemized or prescribed series." *Random House Webster's College Dictionary* (1997). In legal parlance, "course of business" is defined as follows: "What is

usually and normally done in the management of trade or business." Black's Law Dictionary (6th ed).

Anthony Fitzgerald admitted, in sworn deposition testimony, that he performed "bump and paint" work, tune-ups, transmission work, brake work, and oil changes, and that he stored $30,000 worth of automobile repair equipment in the garage. He also testified that he had regular customers and that he charged fixed rates for his labor. In light of his admission that he was "the one to call" for auto repairs in town and that he earned at least part of his income from working as an auto mechanic, we find it irrelevant that he did not possess a mechanic's license, register as a business, or file personal or business tax returns. We also find unavailing Allied's argument that Anthony Fitzgerald's auto work was not steady. He testified that, at times, he would not have any repair jobs for two weeks and, at other times, he would be "swamped" with auto repairs for a month. Moreover, though Allied points out that he did not place a sign in front of the house to advertise his services, Anthony Fitzgerald testified that much of his work came from word-of-mouth referrals. This evidence unequivocally establishes that, while it was by no means large or flourishing, he operated a vehicle-repair business for financial gain within the plain meaning of the statute. See *Terrien, supra* at 64.

### C. GRATUITY

Allied raises another related question of first impression: If the amendment of MCL 500.3121(1) exempts a no-fault insurer from liability for accidental property damage that occurs within the course of an auto-repair business, does this exemption apply if the repair is done without charge? That is, if the business owner performs a complimentary repair to a friend's or a relative's

vehicle in the same location at which the owner otherwise conducts a business for profit, does this mean that the damage did not occur "within the course of a business," so that the no-fault carrier is responsible to pay for property damage that occurred during the repair? To support its argument, Allied presented unrebutted evidence that, at the time of the fire, Anthony Fitzgerald was working on Brauning's van as a favor and, as Allied argues, not "within the course of" the business.

We see no principled basis to carve out the exception urged by Allied to the Legislature's determination to exempt no-fault carriers from coverage, either on the basis of the situs of the auto-repair business or on the basis of the repair business owner's decision to grant a discount or a gratuity to a particular customer. In either case, if the business of repairing cars caused the property damage, then the statutory exclusion from no-fault coverage obtains unless and until the Legislature further amends the statute. But, as it currently reads, the predicate to the finding of no no-fault coverage is a fire related to auto repair at an auto-repair business. The exception advanced by Allied does not appear in the statute, and we are not free to rewrite this legislation. *McGhee v Helsel*, 262 Mich App 221, 224; 686 NW2d 6 (2004).

For these reasons, we hold that the trial court correctly granted summary disposition for Pioneer. As the auto insurer, Pioneer cannot be held liable for the property protection benefits pursuant to the plain language of MCL 500.3121.[4]

---

[4] Because we hold that the trial court correctly granted summary disposition for Pioneer on this issue, we need not address Allied's alternative argument about Anthony Fitzgerald's use of the drop light during the vehicle repair and the light's causal connection to the fire.

Affirmed.

BORRELLO, P.J., concurred.

WILDER, J. *(dissenting)*. I must respectfully dissent. I would not conclude, as does the majority, that MCL 500.3121(1) should be interpreted to preclude property protection insurance as a matter of law for any "fire related to auto repair at an auto-repair business." See *ante* at 452. Rather, I would conclude that the plain language of the statute would preclude coverage of an auto-repair-related fire at an auto-repair business *only* if the facts demonstrated that the repair and the related damage occurred "within the course of a business." The trial court's ruling that Anthony Fitzgerald conducted a business from his father's garage did not address the question whether the specific repair at issue occurred within the course of that business. Thus, I would find that the trial court erred in granting summary disposition in favor of Pioneer.

MCL 500.3121(1) states in relevant part:

> Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle . . . . However, accidental damage to tangible property does not include accidental damage to tangible property, other than the insured motor vehicle, that occurs *within the course of a business* of repairing, servicing, or otherwise maintaining motor vehicles. [Emphasis added.]

Thus, the focus of the statute as applied to this case is whether the damage occurred *"within the course of* [an auto-repair] business," and not, as posited by the majority, whether the damage occurred *"at* an auto-repair business."

In the instant case, Allied presented evidence that the automobile repair at issue was performed by Anthony Fitzgerald as a favor for Patricia Brauning, his former girlfriend and the mother of his child, and that the repair occurred in the garage of a private home rather than at a commercially zoned facility. In addition, contrary to the evidence that Mr. Fitzgerald regularly performed automobile repairs in his father's garage for an established clientele, Mr. Fitzgerald testified that at the time of the fire he only performed repairs in the garage on his own vehicle. Thus, even assuming for purposes of the summary disposition motion that Mr. Fitzgerald conducted an auto-repair business in his father's garage on an ongoing basis, the question still remains whether the evidence established that the specific repair at issue in this case, the repair of Ms. Brauning's vehicle, was done in a business context, i.e., "within the course of" Mr. Fitzgerald's auto-repair business, rather than in a residential context.

As our Supreme Court has noted, "residential and commercial or business uses of property are not mutually exclusive; an activity may be both residential in nature and commercial or business in nature." *Terrien v Zwit*, 467 Mich 56, 73; 648 NW2d 602 (2002). The record presented herein requires consideration of whether the context of the repair was a residential use or a business use of the garage.[1] I would conclude that the evidence presented by Allied raises a genuine issue of material fact regarding whether the repair of Ms. Brauning's vehicle constituted a residential use of the property or a repair within the course of his business.

---

[1] For example, I would not think it would be in serious dispute that Mr. Fitzgerald's use of his father's garage to repair his own vehicle would be considered a residential use and not a use of the residential property in the course of his auto-repair business.

Although the evidence that Mr. Fitzgerald did the repair work as a gratuity is unrebutted on the record, in reality whether Mr. Fitzgerald's assertion in this regard is credible is a jury question. *Brown v Mayor of Detroit,* 271 Mich App 692, 710; 723 NW2d 464 (2006) (stating that "if a party submits documentary evidence to support his or her position, the jury should decide issues of credibility").

For the reasons stated, I would reverse and remand for further proceedings.