*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD FINCH, JR.,

       Plaintiff-Appellee,

v

RUSSELL KEITH GEWIN, LANDSTAR
RANGER, INC., LLOYD'S UNDERWRITERS AT
LONDON SPONSORING SYNDICATES,
CERTAIN UNDERWRITERS LLOYD'S LONDON
SUBSCRIBING TO CERTIFIED NO.
NAGN04404018-12, OLD REPUBLIC
INSURANCE COMPANY, MICHIGAN
ASSIGNED CLAIMS PLAN, and MICHIGAN
AUTOMOBILE INSURANCE PLACEMENT
FACILITY,

       Defendants-Appellees,

and

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY/UNEMPLOYMENT
INSURANCE AGENCY,

       Appellant.

UNPUBLISHED
October 5, 2023

No. 360189
Wayne Circuit Court
LC No. 20-016580-NI

RICHARD FINCH, JR.,

       Plaintiff-Appellant,

v

RUSSELL KEITH GEWIN, LANDSTAR
RANGER, INC., LLOYD'S UNDERWRITERS AT

No. 362466
Wayne Circuit Court
LC No. 20-016580-NI

-1-

LONDON SPONSORING SYNDICATES,
CERTAIN UNDERWRITERS LLOYD'S LONDON
SUBSCRIBING TO CERTIFIED NO.
NAGN04404018-12, OLD REPUBLIC GENERAL
INSURANCE COMPANY CORPORATION, OLD
REPUBLIC INSURANCE COMPANY,
MICHIGAN ASSIGNED CLAIMS PLAN, and
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

        Defendants-Appellees.

Before:  SHAPIRO, P.J., and M.J. KELLY and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals[1] involving disputes related to the no-fault act, MCL 500.3101 *et seq*., and the Michigan Employment Security Act (MESA), MCL 421.1 *et seq*., in Docket No. 360189, appellant, the Department of Labor and Economic Opportunity/Unemployment Insurance Agency (UIA), appeals by leave granted[2] the trial court's order compelling the UIA to provide discovery in the present case.  In Docket No. 362466, plaintiff, Richard Finch, Jr., appeals as of right the trial court's orders granting summary disposition in favor of the Lloyd's of London defendants,[3] third-party defendants, Russell Keith Gewin and Landstar Ranger, Inc., and defendants, the Michigan Assigned Claims Plan (MACP) and the Michigan Automobile Insurance Placement Facility (MAIPF).  For the reasons stated in this opinion, we affirm the trial court's order compelling the UIA to provide discovery and the grant of summary disposition to MACP and MAIPF.  However, we reverse the trial court's decision to grant summary disposition to Lloyd's of London, Gewin, and Landstar.

## I.  BACKGROUND

This case arose out of a dispute regarding insurance coverage after plaintiff alleged he was injured while unloading a 2003 Chevrolet Express Passenger Van on December 27, 2019.  Plaintiff's fiancée, Jennifer Madole, was the titled owner of the van, but plaintiff testified that he was the only person who actually used it and that he never used it as a personal vehicle.  Plaintiff drove the van to deliver packages for Flexible Workforce, the company for which he worked under

---

[1] *Finch v Gewin*, unpublished order of the Court of Appeals, entered October 25, 2022 (Docket Nos. 360189 and 362466).

[2] *Finch v Gewin*, unpublished order of the Court of Appeals, entered July 1, 2022 (Docket No. 360189).

[3] We will we refer to Lloyd's Underwriters at London Sponsoring Syndicates and Certain Underwriters Lloyd's Subscribing to Certified No. NAGN04404018-12 collectively as "Lloyd's of London."

an independent contractor agreement. Lloyd's of London offered commercial liability insurance coverage to independent contractors working for Flexible Workforce. The policy provided in-service liability coverage, uninsured/underinsured coverage, and "minimum statutory Personal Injury Protection benefits the 'insured' is legally entitled to recover as provided by applicable state law." The application for coverage stated that the independent contractor "must continue to maintain their personal policy for vehicle registration purposes and physical damage coverage." Plaintiff applied for and obtained a policy from Lloyd's of London in September 2019, which listed plaintiff as the insured and the van as a covered vehicle. Neither plaintiff nor Madole maintained a personal no-fault policy.

On December 27, 2019, plaintiff was delivering a package to the MGM Grand Casino in Detroit, Michigan. Plaintiff alleged that Gewin, who was leaving the loading dock of the MGM Grand after delivering goods from his Mack semi-truck, negligently struck the open door of plaintiff's van. Plaintiff stated that he was reaching for the package to deliver to the MGM Grand, which was between the two front seats of the van, when he was pinned by the front driver-side door of the van when it was struck by Gewin's semi-truck. Plaintiff asserted that he was injured and taken to the hospital by ambulance after he was freed from the door. Plaintiff submitted claims for no-fault benefits, including coverage for loss of wages and replacement services, to Lloyd's of London. Plaintiff claims that he has been unable to work because of his injuries.

Initially, Lloyd's of London paid plaintiff's benefits, but eventually stopped after a coverage dispute arose in December 2020. Concerned that this might occur, plaintiff applied for coverage with the MACP and MAIPF in November 2020. In his application, plaintiff stated he was unable to work because of injuries he suffered during the accident. Before the MACP and MAIPF completed their investigation into potentially covering plaintiff, plaintiff filed the instant lawsuit. In Counts I through III of the complaint, plaintiff brought third-party negligence claims against Gewin and Landstar. More specifically, plaintiff accused Gewin of negligently driving his semi-truck; asserted Landstar was liable for Gewin's negligence under theories of owners' or vicarious liability; and claimed Landstar negligently hired, retained, and supervised Gewin. Plaintiff sought first-party no-fault benefits from Lloyd's of London, asserting he was injured while unloading a vehicle covered by Lloyd's of London. Plaintiff alleged Lloyd's of London unreasonably failed to pay for benefits arising out of his injuries, including wage loss, replacement services, and medical care. Plaintiff alternatively asserted that the MACP and MAIPF should provide coverage because there was no other identifiable no-fault insurance provider involved.[4]

During the discovery process, plaintiff participated in a deposition, during which he testified he applied for and received unemployment benefits in 2020 and 2021. This testimony led to Lloyd's of London submitting a subpoena to the UIA for production of documents it had with respect to plaintiff's application for, and receipt of, unemployment benefits. Lloyd's of London obtained a signed release from plaintiff, who agreed he was waiving any protections he had under

---

[4] Plaintiff also sued Old Republic General Insurance Company Corporation and Old Republic Insurance Company, which he alleged provided insurance coverage for Gewin's semi-truck. The Old Republic defendants were dismissed from the litigation early in the proceedings, and plaintiff has not challenged that order in this appeal.

statute to the confidentiality of the documents. The UIA declined to provide the documentation, citing MCL 421.11(b)(1)(*iii*), which did not permit it to provide discovery in a case in which the UIA was not a party. Lloyd's of London moved the trial court to compel the UIA to produce the requested documents, primarily relying on MCL 421.11a, which codified an exception to MCL 421.11(b)(1)(*iii*), when a claimant testifies voluntarily in separate litigation about representations they made to the UIA. Lloyd's of London also relied on plaintiff's signed waiver of his statutory rights. The trial court ultimately agreed with Lloyd's of London and entered an order compelling the UIA to produce the requested documents. The UIA applied for leave to appeal that decision of the trial court, which we granted.

Lloyd's of London moved for summary disposition under MCR 2.116(C)(10), arguing that the commercial policy provided to plaintiff was not a no-fault policy and should not be read as one because the application required plaintiff to maintain his own personal coverage, which he failed to do. Because the policy was not a no-fault policy, it was to be applied as would any other contract, and plaintiff was not covered under the policy because it only covered an individual "while driving," and plaintiff was not driving the van at the time of the accident. Rather, the van was parked and plaintiff was outside.

Gewin and Landstar filed a concurrence with Lloyd's of London's motion for summary disposition, which included a claim that, if the trial court agreed with Lloyd's of London's position regarding a lack of no-fault coverage, then plaintiff was barred from obtaining third-party damages under the exclusion in MCL 500.3135(2)(c). Gewin and Landstar argued summary disposition was warranted in their favor under MCR 2.116(I)(1). Similarly, the MACP and MAIPF filed a response to Lloyd's of London's motion for summary disposition, arguing that, regardless of whether the trial court concluded the policy provided by Lloyd's of London was a no-fault policy, the MACP and MAIPF were entitled to summary disposition. This was because plaintiff was barred from coverage either as a result of a higher priority no-fault insurer or because he failed to maintain the appropriate securities under the no-fault act. The MACP and MAIPF also moved for summary disposition on the basis that plaintiff committed a fraudulent insurance act in his application for benefits.

In response, plaintiff argued that Michigan law and public policy required his insurance policy with Lloyd's of London to either be read in accordance with, or reformed to comply with, the no-fault act. Upon doing so, the language in the policy that would result in plaintiff's injuries lacking coverage would no longer be applicable. Pertinently, the no-fault act does not permit an automobile insurance policy to provide personal protection insurance (PIP) benefits only when a vehicle is being driven.

The trial court considered the various motions for summary disposition, and ultimately concluded summary disposition was warranted in favor of Lloyd's of London, Gewin, Landstar, the MACP, and the MAIPF. The trial court entered written orders memorializing those decisions, and the appeal in Docket No. 362466 followed.

## II. DOCKET NO. 360189

The UIA argues that the trial court abused its discretion by granting Lloyd's of London's motion to compel production of documents held by the UIA. We disagree.[5]

"Michigan follows an open, broad discovery policy that permits liberal discovery . . . ." *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 367; 986 NW2d 451 (2022) (quotation marks and citation omitted; alteration in original). "[A] party is permitted to obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" *Sarkar v Doe*, 318 Mich App 156, 175; 897 NW2d 207 (2016) (quotation marks, citation, second alteration in original), citing MCR 2.302(B)(1). There is no dispute in this case that the requested evidence was relevant and generally discoverable if no statutory privilege existed.

There are instances when a statute bars discovery of certain documents, which must be enforced absent an exception. *Johnson v Detroit Med Ctr*, 291 Mich App 165, 168-169; 804 NW2d 754 (2010). MCL 421.11(b)(1) provides in relevant part:

> (b)(1) Information obtained from an employing unit or individual pursuant to the administration of this act and determinations as to the benefit rights of any individual are confidential . . . . However, all of the following apply:
>
> * * *
>
> (*iii*) Except as provided in this act, the information and determinations must not be used in any action or proceeding before any court or administrative tribunal unless the unemployment agency is a party to or a complainant in the action or proceeding, or unless used for the prosecution of fraud, civil proceeding, or other

---

[5] "This Court reviews for an abuse of discretion a trial court's decision on a motion to compel discovery." *In re Estate of Seybert*, 340 Mich App 207, 210; 985 NW2d 874 (2022). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 367; 986 NW2d 451 (2022) (quotation marks and citation omitted). "However, whether production of requested documents is barred by statute is a question of law that we review de novo." *Johnson v Detroit Med Ctr*, 291 Mich App 165, 166-167; 804 NW2d 754 (2010). "A trial court necessarily abuses its discretion when it makes an error of law." *Micheli*, 340 Mich App at 367 (quotation marks and citation omitted).

Questions of statutory interpretation are reviewed de novo. *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 577; 983 NW2d 798 (2022). The goal when interpreting statutes is to discern the Legislature's intent, the most reliable indicator of which is the statute's language. *Baurer v Saginaw Co*, 332 Mich App 174, 192; 955 NW2d 553 (2020). "Statutes must be construed reasonably, keeping in mind the purpose of the act, and to avoid absurd results." *Id.* at 193.

legal proceeding in the programs indicated in subdivision (2).[6]    [MCL 421.11(b)(1)(*iii*).]

In *Storey v Meijer, Inc*, 431 Mich 368, 376; 429 NW2d 169 (1988), the Supreme Court concluded that MCL 421.11(b)(1) "clearly and unambiguously prohibits the use of [UIA] information and determinations in subsequent civil proceedings unless the [UIA] is a party or complainant in the action."

However, MCL 421.11a, which was added to MESA by 2012 PA 422, "sets forth an exception" to MCL 421.11(b)(1) and the rule announced in *Storey*. *Bodnar v St John Providence, Inc*, 327 Mich App 203, 232; 933 NW2d 363 (2019). MCL 421.11a states: "An individual who testifies voluntarily before another body concerning representations the individual made to the unemployment agency pursuant to the administration of this act waives any privilege under [MCL 421.11] otherwise applying to the individual's representations to the unemployment agency." In *Bodnar*, we held that, for purposes of MCL 421.11a, an affidavit submitted by the defendant's human resource manager in support of its motion for summary disposition constituted "voluntary testimony submitted before a judicial body" that waived the privilege under MCL 421.11(b)(1) with respect to documents relied on by the plaintiffs concerning unemployment proceedings before the UIA. See *Bodnar*, 327 Mich App at 232-233.

The parties dispute whether MCL 421.11a applies in this case, and thus whether plaintiff waived any protections he might have had under MCL 421.11(1)(b)(*iii*). Lloyd's of London primarily argues that plaintiff's deposition testimony concerning his representations to the UIA qualified as testimony "voluntarily" offered before another body because plaintiff is the party who initiated this action, not a defendant who was obliged to participate and testify against his will. Relying on a legislator's memorandum to several other legislators, the UIA contends that the Legislature intended for MCL 421.11a to operate only in "subsequent proceedings between an employee and employer"—i.e., the parties to the original UIA proceedings. However, given the text of MCL 421.11a, we see no basis to consult legislative history,[7] and even if we were so inclined, a single memorandum offers little guidance and we remain skeptical that the UIA's view of the statute is correct. Having said that, it is clear that we need not decide this issue because we agree with Lloyd's of London's alternative argument that plaintiff *explicitly* waived any privilege concerning the subpoenaed records by executing the release form that Lloyd's of London had submitted to the UIA with the subpoena.

As explained by this Court, "[a] waiver is the intentional and voluntary relinquishment of a known right." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 585; 939 NW2d 705 (2019) (quotation marks and citation omitted). "[A] valid waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose, or be an implied waiver, evidenced

---

[6] This is a reference to MCL 421.11(b)(2), which is a list of public-benefits programs, both state and federal.

[7] "[T]he legislative history of a statute is relevant to the statute's meaning only where the statute is ambiguous." *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 430; 987 NW2d 501 (2022). .

by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Id*. (quotation marks and citation omitted; alteration in original). The person or entity to whom a privilege belongs can waive the privilege. *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 535; 854 NW2d 152 (2014).

The parties dispute whether the protections afforded by MCL 421.11(b)(1) are meant to protect the claimant or the UIA. But when reading MCL 421.11(b)(1)(*iii*) together with MCL 421.11a, it becomes clear that, in situations like the present case, the statute was meant to protect claimants, not the UIA.[8] See *People v Anderson*, 330 Mich App 189, 197; 946 NW2d 825 (2019) ("Statutes that address the same subject or share a common purpose are *in pari materia* and must be read together as a whole.") (quotation marks and citation omitted). Under MCL 421.11a, under certain circumstances, a claimant automatically waives any privilege he had under MCL 421.11. By contrast, the relevant statutes make no reference to a waiver of privilege by the UIA. Simply put, if MCL 421.11(b)(1)(*iii*) was meant to protect the UIA in any manner, the statutory exception to the rule would not permit waiver of those protections by a unilateral action of the claimant.

In this case, regardless of whether MCL 421.11a applies, it is entirely undisputed that plaintiff voluntarily chose to waive any protections he had under MCL 421.11(b)(1)(*iii*) by signing an authorization for the UIA to produce documents requested by Lloyd's of London. The release indicated plaintiff was aware the documents would be going to Lloyd's of London's attorney, and cited the purpose for the release as "discovery in a civil lawsuit." Plaintiff indicated the UIA should release "[a]ll information on file from Q4 2019 to Q3 2021," and he signed the document on August 31, 2021. Further, when the UIA and Lloyd's of London were litigating this issue, plaintiff did not make any attempt to assert his privilege under MCL 421.11(b)(1)(*iii*).

Although the MESA contains a specific provision regarding an implied waiver by a claimant, i.e., MCL 421.11a, the parties have not identified a similar statutory subsection regarding an express waiver. Nevertheless, the Legislature's acknowledgment in MCL 421.11a that a claimant can impliedly waive any and all of their privileges under MCL 421.11 necessarily means a claimant can expressly waive those same rights. It would be absurd to allow a claimant's statements to be used in future litigation because of a potentially accidental disclosure in other litigation but not when the claimant expressly approves of using those statements in the case at issue. See *Dep't of Transp v Riverview-Trenton R Co*, 332 Mich App 574, 609; 958 NW2d 246 (2020) ("[T]his Court must . . . avoid interpreting such language in an absurd or illogical way."). Thus, with respect to the facts of this case, in which plaintiff undisputedly and expressly waived any privileges under MCL 421.11, the UIA has not identified any legal grounds to object to the

---

[8] We express no opinion whether the statute might protect others, such as other parties in the claims for unemployment benefits, like an employer. However, for the purposes of this appeal, the only relevant person is plaintiff, who was a claimant with the UIA.

subpoena. Consequently, the trial court did not abuse its discretion when it compelled the UIA to produce the documents requested.[9]

## III. DOCKET NO. 362466

Plaintiff challenges the trial court's orders granting summary disposition in favor of Lloyd's of London, Gewin, Landstar, the MACP, and the MAIPF. We affirm the dismissal of the MACP and MAIPF, but reverse the grant of summary disposition to Lloyd's of London, Gewin, and Landstar.

## A. LLOYD'S OF LONDON

Plaintiff first argues that the trial court improperly granted summary disposition in favor of Lloyd's of London. The trial court relied on the policy language defining "insured" as "the 'insured' while driving a 'scheduled vehicle,' " and concluded that plaintiff was disqualified from receiving PIP benefits under the policy because he was parked and unloading the van rather than driving at the time he was injured. Plaintiff contends that the trial court erred because, when an insurer offers a policy providing PIP coverage in Michigan, the terms are governed by the no-fault act, which does not limit recovery of PIP benefits to injuries suffered "while driving." We agree.[10]

As an initial matter, Lloyd's of London emphasizes that the commercial policy it provided to plaintiff did not provide full no-fault insurance coverage. That is, the policy only provided PIP coverage and not the full security required by MCL 500.3101(1). Lloyd's of London maintains that no statute or caselaw precludes it from offering only one of the mandatory no-fault coverages.

In *Johnson v USA Underwriters*, 328 Mich App 223, 239; 936 NW2d 834 (2019), this Court determined that the sale of "optional coverages without mandatory no-fault coverages, such

---

[9] Given this conclusion, the remaining arguments raised by Lloyd's of London and the UIA have been rendered moot, and we decline to consider them. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018).

[10] "This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

as personal protection insurance, property protection insurance, and residual-liability insurance," does not violate the no-fault act or public policy. In reaching that conclusion with respect to collision and comprehensive coverage insurance policies, this Court found analogous the sale of bobtail policies[11] and relied on the decision in *Integral Ins Co v Maersk Container Service, Co, Inc*, 206 Mich App 325; 520 NW2d 656 (1994), which held that the insured in that case had properly obtained full coverage through multiple policies consistent with MCL 257.520(j), which "allows insureds to meet the requirements for motor vehicle liability coverage through more than one insurance carrier[.]" See *Johnson*, 328 Mich App at 244-245. In *Johnson*, we found that reasoning applicable to optional insurance coverages, *id*. at 245, and ultimately held that the trial court erred by reforming the insurance policy in that case to include the mandatory no-fault coverages. See *id*. at 232, 247.

In light of *Johnson*, we decline plaintiff's request to reform the commercial policy at issue so as to provide all the coverages mandated by the no-fault act in addition to PIP. However, this does not alter the statutory requirement that an insurer who sells PIP coverage, even one limited to certain types of use, e.g., commercial, personal, or bobtail, must still comply with the statutory requirement that within the relevant use, it must provide benefits for any "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1).[12] Here, Lloyd's of London sold a PIP policy applicable to the use of the van while under commercial dispatch, but rather than providing coverage in that setting based on the "arising out of" standard, as mandated by statute, it only provided coverage "while driving," which explicitly violates the no-fault act. Lloyd's of London has not cited any caselaw to support its position that an insurer may contractually negate the statutory "arising out of" standard. The no-fault act "is the 'rule book' for deciding the issues involved in questions regarding awarding [PIP] benefits." *Meemic Ins Co v Fortson*, 506 Mich 287, 302; 954 NW2d 115 (2020), quoting *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 524-525; 502 NW2d 310 (1993). Accordingly, the no-fault act controls when there is a conflict between the language of the policy at issue and the statute. See *Andary v USAA Cas Ins Co*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 164772); slip op at 22. See also *Memberselect Ins Co v Hartford Accident & Indemnity Co*, ___ Mich App ___, ___ (2022) (Docket No. 355326); slip op at 2 (holding that an insurer could not avoid the statutory PIP requirement that it must pay PIP benefits to the person named in the policy "by labeling a no-fault policy as 'commercial[.]' ").

To be clear, whether the insured must claim benefits under a commercial PIP policy, a personal PIP policy, or a bobtail PIP policy, the policy must afford coverage for any injury that "arises out of" the vehicle's commercial, personal, or bobtail use, respectively. Because a policy providing PIP coverage must be read in accordance with the PIP provisions of the no-fault act, the trial court erred by granting summary disposition on the basis of the "while driving" language in Lloyd's of London's policy.

---

[11] A bobtail policy is a policy covering a tractor when it was not hauling a load under dispatch.

[12] Plaintiff argued before the trial court that he was entitled to recover PIP benefits under the parked-vehicle exception, MCL 500.3106(1), which Lloyd's of London has yet to dispute. We need not reach this issue because the parties do not raise it on appeal.

-9-

Lloyd's of London also relies on the statement in the application for coverage that the insured "must continue to maintain their personal policy for vehicle registration purposes and physical damage coverage." "An insurance policy is much the same as any other contract," and the application is considered part of the contract. See *Dancey v Travelers Prop Cas Co of America*, 288 Mich App 1, 8; 792 NW2d 372 (2010) (quotation marks and citation omitted). However, although Lloyd's of London emphasizes plaintiff's failure to maintain a personal policy, it does not argue that this constituted a substantial breach of the insurance contract such that it could rescind the contract or otherwise cease performance of its contractual obligations. See *Meemic Ins Co*, 506 Mich at 307 ("At common law, a contract might also be rescinded because of a party's failure to perform a substantial part of the contract or one of its essential items[.]") (quotation marks and citation omitted; alteration in original). Indeed, plaintiff likely would not have been covered under a personal no-fault policy given the business-use exclusion found in most policies, see MCL 500.2118(2)(f); *Husted v Dobbs*, 459 Mich 500, 506; 591 NW2d 642 (1999), and therefore the failure to maintain a personal policy cannot be deemed substantial or material. Accordingly, Lloyd's of London does not identify a legal basis to conclude that plaintiff's failure to maintain a personal policy precludes him from recovering under the Lloyd's policy while driving under dispatch.[13]

As an alternative ground for affirmance, Lloyd's of London relies on the wrongful-conduct rule. "The wrongful-conduct rule provides that when a plaintiff's action is based, in whole or in part, on his own illegal conduct, his claim is generally barred." *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 89; 697 NW2d 558 (2005) (quotation marks and citation omitted). Lloyd's of London argues that plaintiff committed wrongful conduct by seeking wage-loss coverage from Lloyd's of London while receiving unemployment benefits and weekly income from Flexible Workforce. Lloyd's of London also asserts plaintiff engaged in wrongful conduct by fraudulently receiving a Paycheck Protection Program (PPP) loan during the COVID-19 pandemic. Both of these arguments fail for the same reason—Lloyd's of London has failed to identify a causal nexus between plaintiff's alleged illegal behavior and his damages. *Orzel v Scott Drug Co*, 449 Mich 550, 564; 537 NW2d 208 (1995) ("For the wrongful-conduct rule to apply, a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages."). In this case, plaintiff's damages were caused by Gewin driving his semi-truck into the door of the van behind which plaintiff was standing, causing plaintiff to be pinned by the door. Plaintiff's alleged "wrongful conduct" occurred later, and thus, could not be a cause of plaintiff's damages. *Id*. The wrongful-conduct rule only applies when the illegal activities are a cause of damages, which is not the case here. Instead, Lloyd's of London contends the alleged fraud was a specific reason plaintiff was not entitled to damages at all, not the cause of the damages he sought. Additionally, Lloyd's of London has not identified a penal statute plaintiff violated by obtaining the PPP loan, which is a necessary component for the wrongful-conduct rule to apply. *Id*. at 561. Consequently, these alternative arguments for affirmance lack merit.

---

[13] At no time has Lloyd's of London argued, as an alternative basis for summary disposition, that MCL 500.3113(b) applies such that plaintiff should be precluded from recovering PIP benefits under the policy for not maintaining the security required by MCL 500.3101(1). Because this issue has not been raised or briefed by Lloyd's of London, we decline to address it.

-10-

## B. MACP & MAIPF

Because we conclude that plaintiff is entitled to receive PIP benefits from Lloyd's of London in accordance with the no-fault act, his claims against the MACP and MAIPF are moot, and we need not address whether the trial court erred by granting summary disposition in their favor. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018).

## C. GEWIN AND LANDSTAR

Plaintiff lastly argues that the trial court erred by granting summary disposition to Gewin and Landstar on the basis of MCL 500.3135(2)(c). We agree with plaintiff that this statute does not apply in this case because he was not "operating" the vehicle at the time of the accident.[14]

While "Michigan's no-fault act generally abolishes tort liability arising from the ownership, maintenance, or use of a motor vehicle," *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 490; 835 NW2d 363 (2013), "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle" where "the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement," MCL 500.3135(1). However, under MCL 500.3135(2)(c), "[d]amages must not be assessed in favor of a party who was operating his or her own vehicle at the time the injury occurred and did not have in effect for that motor vehicle the security required by section 3101(1) at the time of the injury occurred."

---

[14] The trial court granted summary disposition to Gewin and Landstar under MCR 2.116(I)(1), a decision we review de novo. *Wilcox v Wheatley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358630); slip op at 2.

> [W]hen a court reviews a motion for summary disposition, MCR 2.116(I)(1) provides that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." [*Al-Maliki v Grant*, 286 Mich App 483, 485; 781 NW2d 853 (2009).]

This issue turns on a question of statutory interpretation, which we review de novo. *Saugatuck Dunes Coastal Alliance*, 509 Mich at 577.

Plaintiff did not properly preserve the "operating" issue by raising it before the trial court. However, this Court has discretion to overlook the lack of preservation and address an unpreserved issue when "failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 3. As noted, this issue turns on statutory interpretation (i.e., a question of law), for which the necessary facts have been presented. Accordingly, we exercise our discretion to address it.

Plaintiff contends that MCL 500.3135(2)(c) does not apply to him because he was not operating the van at the time he was injured.[15] The no-fault act does not appear to define the term "operating," and the parties have not identified any caselaw interpreting the word as related to the no-fault act. For their part, Gewin and Landstar attempt to draw a comparison to MCL 500.3113(b), which precludes payment of PIP benefits to a person who "was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by [MCL 500.3101] was not in effect." Focusing on this statute then permits Gewin and Landstar to look to MCL 500.3101(1), which states the proper insurance "is only required to be in effect during the period the motor vehicle is driven or moved on a highway." A temporary stop during the course of a delivery, Gewin and Landstar note, does not fall outside of the "period the motor vehicle is driven or moved on a highway," as that phrase was defined by this Court in *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 774-775; 887 NW2d 635 (2016).

This argument, of course, ignores the issue presented by plaintiff, which was whether he was "operating" the van at the time he was injured, as required for the preclusion under MCL 500.3135(2)(c). Indeed, analysis of MCL 500.3101(1) relates to whether a vehicle is required to have no-fault coverage, while plaintiff insists his argument is entirely independent of that question. Pertinently, plaintiff contends MCL 500.3135(2)(c) does not bar his claim for third-party damages from Gewin and Landstar even if his van was required to be properly insured and was not, so long as he was not operating it when he was injured. We agree with plaintiff's reading of the statute.

Plaintiff encourages us to turn to the Michigan Vehicle Code, MCL 257.1 *et seq.*, to define the term "operating,"[16] and also refers to dictionary definitions. Under any of these definitions, and considering the evidence in the light most favorable to plaintiff, plaintiff was not "operating" the van at the time he was injured. Instead, plaintiff was standing outside of the van and reaching

---

[15] Plaintiff also argues that MCL 500.3135(2)(c) does not apply to him because he was not an owner of the van. Rather than addressing the specific definitions of an "owner" under the no-fault act, plaintiff merely claims Madole was the owner because she held the title to the van. While Madole certainly was an owner of the van, Michigan caselaw is clear there can be more than one owner of a given vehicle. *Abraham v State Farm Mut Auto Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356748); slip op at 7. Plaintiff simply does not address whether he should be considered an owner under MCL 500.3101(3)(l)(*i*), which defines "owner as "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." There does not appear to be any dispute that plaintiff had use of the subject van for more than 30 days. Indeed, plaintiff explicitly testified that he was the only person who used the van, he used it whenever he worked, he never had to ask to use it, and he had the keys to the van. Further, he had been using the van to perform delivery services for Flexible Workforce for a period greater than 30 days. In short, plaintiff fails to establish a genuine issue of material fact as to whether he was a constructive owner of the van.

[16] Under MCL 257.35a, " '[o]perate' or 'operating' means" either "[b]eing in actual physical control of a vehicle," or "[c]ausing an automated motor vehicle to move under its own power in automatic mode upon a highway or street regardless of whether the person is physically present in that automated motor vehicle at that time."

-12-

inside for a package. He was not "in actual physical control" of the van, MCL 257.35a(a), did not cause the van to move under its own power, MCL 257.35a(b), and had not caused the van to function. Consequently, according the unambiguous language of MCL 500.3135(2)(c), plaintiff was not barred from recovering third-party damages. Accordingly, we reverse the trial court's order granting summary disposition in favor of Gewin and Landstar.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Thomas C. Cameron